## No. 12,703.

FITZSIMMONS *v.* OLINGER MORTUARY ASSOCIATION.
(17 P. [2d] 535)

Decided November 28, 1932.

Mr. Joseph P. Constantine, for plaintiff in error.

Mr. Henry E. May, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

These parties appear here in the same order as in the trial court and for convenience we designate them as plaintiff and defendant respectively.

This is a suit for damages for mental suffering, alleged to have been inflicted by certain improper acts performed in connection with the conduct of a funeral. Portions of the complaint were stricken on motion, and a demurrer to the remainder, for want of facts, was sustained. Plaintiff then elected to stand, and to review the judgment of dismissal, with prejudice, thereupon entered against her she prosecutes this writ.

The complaint alleges that defendant conducts a general mortuary business; that plaintiff contracted with it to bring the body of her deceased husband from Walden to Denver and prepare it for burial; that due to heavy snows it was necessary to charter an airplane for that purpose; that when the plane was chartered plaintiff told defendant she did not desire "any undue publicity or notoriety" on account of this method of transportation; that as soon as the body reached Denver a picture of it was taken, without her consent, showing it being moved from airplane to hearse; that defendant thereupon inserted in two newspapers of wide circulation an advertisement of its business, accompanied by said picture, including the name of plaintiff and the deceased, laudatory comments on the accomplishment, and the satisfactory character of the service furnished by defendant; that said advertisements were so circulated "in a reck-

less, willful and wanton disregard of the rights and feelings of the plaintiff''; that it was the common talk and belief of the community that plaintiff had, for hire, permitted said picture to be taken and said advertisement circulated; that by reason of the foregoing and ''due to the violation of the terms of the agreement entered into by the plaintiff and the defendant * * * said plaintiff has suffered humiliation and mental suffering and agony to her damage in the sum of $25,000.''

All that portion of the complaint charging that defendant acted in a reckless and willful and wanton disregard of plaintiff's rights and feelings (save as that charge appears in paragraph 8), and in violation of its agreement, and that portion which charged belief in the community that plaintiff had, for a price, been a party to the acts complained of, were stricken.

Error is assigned generally to the order sustaining the motion to strike, and especially to that portion striking the allegation of belief in the community of plaintiff's complicity in the acts complained of, and to the order sustaining the demurrer.

The order sustaining the motion was not objected to and no exception was saved. The necessity therefor is obviated by statute.

Section 66 Code of Civil Procedure, p. 114, C. L. 1921, provides: ''When any motion in writing, affecting any pleadings or for judgment on the pleadings, shall be filed, and ruling or decision had thereon, the said motion, and the ruling or decision, shall be taken as a part of the record, without making the same such by a bill of exceptions.''

Section 422, Id. p. 179 provides: ''No exceptions need be taken to opinions, orders, or decisions of courts of record sustaining or overruling demurrers or written motions affecting or based upon the pleadings * * * but all such * * * shall be taken as a part of the record without being made such by a bill of exceptions.''

The first assignment of error reads: The court erred

in granting the motion of the defendant in error to strike certain portions of the complaint, and more particularly paragraphs 3 and 4 of said motion to strike.

 The assignment, based upon the court's order striking portions of the complaint, was not argued in the briefs. Perhaps the complaint, even after the order to strike was sustained in part, was good. For some reason, not appearing, the court overruled the motion so far as it was directed to the following phrase in paragraph 8, "in a wanton, willful and reckless disregard of the plaintiff's rights and feelings," although striking the same phrase from paragraphs 5 and 6; so that paragraph 8, as it stood when the demurrer was sustained, reads: "That by reason of the said unauthorized photograph and the unauthorized public advertisements by the said defendant in a wanton, wilful and reckless disregard of the plaintiff's rights and feelings said plaintiff has suffered humiliation and mental suffering and agony to her damage in the sum of Twenty-five Thousand ($25,000) Dollars." But in the instant case we think mere failure to argue should not foreclose consideration. Many reviewing courts, of which this is one, reserve the right, on their own motion, to correct errors apparent on the face of the record proper, without objection, exception or assignment. Rule 35 of the rules of this court; *Burton v. Snyder*, 21 Colo. 292, 40 Pac. 451; *Hume v. Robinson*, 23 Colo. 359, 47 Pac. 271; *Elliott v. Elliott*, 34 Colo. 298, 83 Pac. 630; *Barr v. Foster*, 25 Colo. 28, 52 Pac. 1101.

While in each of the foregoing cases our opinion mentions only the absence of an exception to the judgment, there was also in each, in fact, a total absence of objection thereto.

In a case tried on its merits to a jury we reversed for erroneous instructions, although there was neither objection nor exception to the judgment. *Mastin v. Bartholomew*, 41 Colo. 328, 337, 92 Pac. 682.

Again, we entertained jurisdiction of a writ of error to the Court of Appeals over the protest that there was

neither objection nor exception to the judgment, and while Mr. Justice Campbell, speaking for the court, based the decision primarily upon the fact that no statute or rule of court required such objection or exception in case of a writ of error to the Court of Appeals, he further pointed out that the conclusion would be the same had such statute or rule existed. *Bank of Akron v. Dole,* 24 Colo. 94, 48 Pac. 1044.

If the court goes so far in the absence of both objection and exception to a judgment, it would seem clear that no more stringent rule should apply to a motion, and that we should not refuse to consider an alleged erroneous ruling thereon, duly presented by bill of exceptions, merely because not argued. Especially is this true where, as here, such refusal would result in the denial of a right insisted upon in the trial court and fully preserved and presented by the record.

■ Since we are of the opinion that the motion to strike should have been overruled, and that the question of that ruling is fairly presented, we need not consider the vulnerability of the complaint to the demurrer after that motion was sustained. One may not thus mangle his adversary's pleading and then demur him out of court because of the condition in which his attack has left it.

■ In many oral contracts more is implied than is expressed. If the very nature of a man's profession, business or trade, is such as to imply possession of certain qualifications and the guarantee of certain conduct, the assurance that he possesses and will employ those qualifications and will follow that line of conduct is implied in all contracts made with him for the service offered. Illustrations may readily be taken from the professions of medicine and law and the trade of skilled mechanics. 6 C. J. p. 696, §225; 48 C. J. p. 1113, §101; 13 C. J. p. 560, §522.

■ If written contracts are sometimes made with morticians they must be rare. These contracts are usually oral and in them much is necessarily left to im-

plication. There is neither the time nor the mental tranquility essential to negotiation. One who prepares a human body for burial and conducts a funeral usually deals with the living in their most difficult and delicate moments. Bereavement has, for the time being, obliterated the gross and sordid side of human nature and brought to the surface all its tenderness and sensitiveness. The exhibition of callousness or indifference, the offer of insult and indignity, can, of course, inflict no injury on the dead, but they can visit agony akin to torture on the living. So true is this that the chief asset of a mortician and the most conspicuous element of his advertisement is his consideration for the afflicted. A decent respect for their feelings is implied in every contract for his services. If this be not true there is nothing to prevent the embalming of a body and the parading of it through city streets, exposed to the gaze of curious throngs, while a hired crier calls attention to it as an example of the undertaker's skill. Certainly no stipulation need be made in the contract of employment to protect relatives of the deceased from such an outrage. If those relatives have taken the precaution, as this complaint alleged, of demanding, or stipulating for, no "undue publicity or notoriety," no doubt of the bounden contractual duty to comply can remain. If defendant's contract of employment included, as the record before us justifies us in holding, an express or implied agreement that nothing would be done to outrage the feelings of an ordinary person, or unnecessarily inflict upon such person "humiliation and mental suffering and agony" and that contract was violated, then plaintiff's legal right of recovery is established by unquestioned authority.

Both parties cite and rely upon the Hall case. That opinion divides suits for damages for mental anguish into three classes: (A) Cases of pure tort, where no contractual relation exists and the acts complained of are attended with willful and wanton conduct, such damages are recoverable; (B) "cases where a breach of con-

tract has occurred and acts attending such breach are accompanied by willful, insulting or wanton conduct of the one guilty of the breach, substantial damages may be recovered for mental suffering alone''; (C) cases of mere passive breach of contract by one not engaged in a business of a quasi public nature, where the breach is unintentional and accompanied by no wanton, willful or insulting acts, in which cases such damages are not recoverable. *Hall v. Jackson*, 24 Colo. App. 225, 228, 134 Pac. 151.

As to ''A'' and ''C'' we express no opinion. We agree with that court as to ''B'' and hold that this is such a case. The Hall case was a suit by a widow against a mortician for damages arising from a negligent and unskillful case of embalming. Recovery was denied because there was no charge of willful, wanton or insulting conduct. This was in line with the distinction, approved by numerous authorities, between breaches of contract involving ''simple negligence'' or ''ordinary negligence'' and those accompanied by ''willful, wanton or insulting'' conduct. 17 C. J. pp. 831-837; *Wilcox v. Richmond & D. R. Co.*, 52 Fed. 264, 3 C. C. A. 73, 17 L. R. A. 804; *Westesen v. Bank*, 78 Colo. 217, 240 Pac. 689.

Defendant, however, says that the charge of ''reckless, willful and wanton'' conduct, as originally contained in this complaint, was a mere legal conclusion and for that reason was properly stricken. Such in fact was the basis of a motion to make more specific, which was properly overruled by the court. We are unable to agree with that contention. If the facts alleged are clearly susceptible of a favorable interpretation they will not, of course, support the charge. But if, as here, they are not so susceptible the charge is good and must be answered.

Defendant's arguments that this was at most a violation of a mere moral obligation; that it was only advertising and there is no wrong in advertising within the bounds of truth; that plaintiff has no interest because she was not included in the picture; and that the feat

advertised was a matter of public interest, hence properly exploited, would be equally potent if applied to that shocking illustration hereinbefore used, and so applied, we think they answer themselves.

The picture and advertisement complained of are attached as an exhibit to this complaint. An examination of them, in connection with the allegations of the pleading as filed, convinces us that these constitute a sufficient charge of the violation of a contract and damages for mental suffering arising therefrom, and that a cause of action therefor was stated. It follows that both the motion to strike and the demurrer should have been overruled.

The judgment is reversed and the cause remanded for further proceedings in harmony herewith.

Mr. Justice Campbell and Mr. Justice Hilliard dissent.

Mr. Justice Hilliard dissenting.

Considering the record, I think the opinion of the court decides for the parties a question not fairly involved. It is clear that in the district court plaintiff did not object formally to the ruling striking parts of her complaint, and in this court she definitely casts the point aside.

On presentation here, counsel says: "The plaintiff in error will confine her argument in this brief to a general discussion of the error assigned in her assignment of errors numbered II, to wit: 'The court erred in sustaining the demurrer of the defendant in error.'" Describing the complaint to which the trial court sustained a general demurrer for want of facts, counsel uses the following language, a portion of which I italicize: "The complaint of the plaintiff in error," says counsel, *"after irrelevant matters were stricken,* * * *, reads as follows:"* He then sets out the complaint, omitting the stricken portions.

It will be noted that plaintiff's counsel invokes our

consideration of the sufficiency of the complaint only in the form to which the demurrer was sustained below, and complains of nothing else. In such circumstances I cannot find justification for restoring to the complaint matter which defendant successfully contended below was irrelevant, and to which contention plaintiff, by use of the language above emphasized, here subscribes. Observance of well ordered practice would require affirmance of the judgment.

MR. JUSTICE CAMPBELL concurs in this opinion.