F. Cleveland TRIMBLE,
Plaintiff-Appellee,

v.

The CITY AND COUNTY OF DENVER,
a municipal corporation, and Abraham
J. Kauvar, Defendants-Appellants.

No. 79CA0664.

Colorado Court of Appeals,
Div. I.

Oct. 22, 1981.

Rehearing Denied Nov. 19, 1981.

Certiorari Granted May 10, 1982.

Hoffman & McDermott, Daniel S. Hoffman, Denver, for plaintiff-appellee.

Max P. Zall, City Atty., Brian H. Goral, John L. Stoffel, Jr., Asst. City Attys., Denver, for defendants-appellants, City and County of Denver and Abraham J. Kauvar, in his capacity as Manager of Health and Hospitals.

Holland & Hart, William C. McClearn, Bruce W. Sattler, Denver, for defendant-appellant Abraham J. Kauvar.

ENOCH, Chief Judge.

Defendants, the City and County of Denver and Dr. Abraham Kauvar, appeal a judgment entered in a trial to the court in favor of plaintiff, Dr. Cleveland Trimble. We affirm in part, and reverse in part.

Trimble was the director of the Department of Emergency Medical Services (DEMS) for Denver General Hospital. Kauvar was the manager of Health and Hospitals for the City and County of Denver. As manager, Kauvar had ultimate responsibility for the operation of Denver General Hospital, including DEMS. Following a number of disagreements regarding the operation of the DEMS, Kauvar endeavored to terminate Trimble's involvement in the DEMS by reassigning responsibilities, abolishing certain positions, and reassigning Trimble.

Trimble filed a grievance with the Career Services Board, alleging that Kauvar's conduct was an abuse of administrative power, but later withdrew it pursuant to a settlement agreement with the city. In the settlement agreement, Trimble promised to refrain from suing the city or any of its employees in exchange for the city's agreement to allow him to teach, administer emergency care, and do consulting work for the hospital. Trimble was to receive a monthly salary for one year. The city stopped the salary payments after four

months, and Kauvar refused to allow Trimble to perform the services set out in the settlement contract.

Trimble brought suit against Kauvar and the city, alleging that their conduct prior to the settlement contract was tortious, that Kauvar tortiously interfered with the settlement contract, and that the defendants had breached the settlement contract.

The trial court awarded Trimble $35,000 in compensatory and punitive damages against Kauvar for abuse of administrative power and interference with the settlement contract with the city, $14,062.50 in compensatory damages against the city and Kauvar jointly for breach of the settlement contract, and $35,000 against the city and Kauvar jointly for mental suffering caused by defendants' torts and breach of contract.

## I.

Defendants contend that Trimble affirmed the settlement contract and was bound by its provisions. Therefore, he had given up any right he might have had to bring suit against the city or any of its employees for acts relating to his employment with the city prior to the execution of the contract. We agree.

Trimble acknowledged at trial and in his brief on appeal that he affirmed the settlement contract. He asserts, however, that because there was fraud in the inducement, he could recover on the contract and yet not be bound by his promise not to sue.

■ Under some circumstances, when a contract is breached, the innocent party has the option either to rescind the contract or to affirm it and sue for damages. *Holscher v. Ferry,* 131 Colo. 190, 280 P.2d 655 (1955). However, to allow the innocent party to do both would be to allow double recovery. *Newland v. Holland,* Colo.App., 624 P.2d 933 (1981). On defendant's breach, Trimble could have elected to rescind the contract and would have then been relieved of his promise not to sue. *See Gladden v. Guyer,* 162 Colo. 451, 426 P.2d 953 (1967); *Aaberg v. H. A. Harman Co.,* 144 Colo. 579, 358 P.2d 601 (1960). However, there being

no dispute that the contract was affirmed, Trimble was bound by his promise not to sue. Accordingly, no damages should have been awarded for any claim incident to the period prior to the execution of the settlement contract.

## II.

■ Defendants also contend that Kauvar was not liable for the tort of intentional interference with contract because, for purposes of the tort, he was a party to the contract. Again, we agree.

■ An action may lie for an unjustifiable interference with the contractual relationship between two parties. However, such an action requires the intervention of a third party. *Comtrol, Inc., v. Mountain States Telephone & Telegraph Co.,* 32 Colo. App. 384, 513 P.2d 1082 (1973). It has also been held that "an officer or director of a corporation will not be held independently personally liable for inducing the corporation's breach of its contract, if the officer or director's action is within the scope of his official duties on behalf of the corporation." *Martin v. Platt,* Ind.App., 386 N.E.2d 1026 (1979).

As the city's employee and a key figure in the negotiation and performance of the contract, Kauvar was acting on behalf of the city, and there is no question that his official duties encompassed personnel matters in the DEMS. Although Kauvar's actions were prompted by a bitter dispute between the parties over the proper operation of the DEMS, he was acting within the scope of his official duties and on the city's behalf when he undertook to terminate Trimble's involvement. While his acts may have induced the city to breach the contract, he could not, under the facts of this case, be personally liable for interference with the contract. *See Martin v. Platt, supra.*

## III.

■ We also agree with Kauvar's contention that the court erred in holding him jointly liable for damages for the breach of contract. Though Kauvar may have been the instrument in the breach of the con-

tract, the burden of liability for such breach falls on the city because the contract was with the city. Accordingly, that part of the judgment holding Kauvar jointly liable for breach of the settlement contract was error. Damages should have been awarded only against the city for $14,062.50, the amount owed to Trimble under the settlement contract.

## IV.

Defendants' final contention is that the trial court erred in awarding Trimble $35,000 for mental suffering caused by defendants' tortious conduct and breach of contract. We agree.

In order to recover damages for mental anguish caused by breach of contract, plaintiff must establish a prima facie case in one of two ways. First, a plaintiff may show that defendant's conduct which accompanied the breach could have been the basis of an independent tort claim for negligent or intentional infliction of emotional distress. 38 Am.Jur.2d *Fright, Shock and Mental Disturbance* § 33 (1968). *See McCreery v. Miller's Groceteria Co.*, 99 Colo. 499, 64 P.2d 803 (1937). *Cf. Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163 (1978). Second, a plaintiff need only show a breach of a limited class of contracts, and proof of defendant's conduct is not a factor. *See Fitzsimmons v. Olinger Mortuary Ass'n*, 91 Colo. 544, 17 P.2d 535 (1932); *Westesen v. Olathe State Bank*, 78 Colo. 217, 240 P. 689 (1925).

Trimble's initial argument fits within the first category, *i.e.*, that defendants' conduct could have been the basis for a tort claim for intentional infliction of emotional distress because here the trial court found that Kauvar acted willfully, and with malice in breaching the contract.

Early cases held that an action for intentional infliction of emotional distress would lie in tort if the defendant's conduct was willful and wanton. *Hall v. Jackson*, 24 Colo.App. 225, 134 P. 151 (1913). The same type of conduct, willful and wanton, also supported a claim for damages for mental anguish in a breach of contract case. *McCreery, supra*; Colo.J.I. 30:48 (2d ed.

1980). Later cases have redefined the tort of intentional infliction of emotional distress to require that a plaintiff prove that a defendant's conduct be outrageous. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). Similarly, we hold that in order to recover damages for mental anguish caused by breach of contract the plaintiff must prove that the conduct which accompanied the breach was outrageous.

Conduct is outrageous only when it is "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399 (1978). Where reasonable persons may differ, it is for the fact finder to determine whether the conduct has been sufficiently extreme and outrageous to result in liability. However, it is a question of law in the first instance, whether, based on the evidence presented, a reasonable person could find that the conduct was outrageous. *Blackwell v. Del Bosco*, 35 Colo.App. 399, 536 P.2d 838 (1975), aff'd, 191 Colo. 344, 558 P.2d 563 (1976). The trial court found that the city, through its agent, Kauvar, intended to "get rid of" Trimble and therefore acted maliciously. Even if Kauvar acted maliciously, his conduct was not of the nature that it could be described as outrageous when compared with such cases as *Meiter v. Cavanaugh, supra*, or *Rugg v. McCarty, supra*. Therefore, under the facts of this case, we hold as a matter of law that no reasonable person could conclude that Kauvar's conduct was so extreme and outrageous as to exceed the bounds of decency which prevail in a civilized society. Thus, Trimble was not entitled to recover damages for mental suffering on this basis.

Trimble attempts, in the alternative, to establish a prima facie case under the second theory described above by arguing that, even in the absence of malice, the city's breach of contract supports an award of damages for mental anguish.

Damages for mental anguish caused solely by breach of a contract are recoverable only if the contract is of such a personal or special nature that the parties

knew, or should have foreseen, that a breach by one of them would result in severe mental or emotional distress. *See, e.g., Fitzsimmons, supra. See generally, D. Dobbs, Remedies* § 12.4 at 819 (1973). Here, the settlement contract entered into after arms-length negotiations between successful, experienced individuals, was not of such a nature. Therefore, Trimble also was not entitled to recovery under this theory.

Trimble's reliance on *Westesen v. Olathe State Bank, supra,* is misplaced. In *Westesen,* the plaintiff, in a special effort to insure the availability of bank deposits during his vacation in California, made a contract with his bank. The bank was put on notice that the purpose of the contract was to make plaintiff secure from the possibility of being stranded in another state without acquaintances or financial resources. The court noted that the facts of that case justified a narrow exception to the general rule of non-recovery for a "passive breach" of contract.

The judgment for $14,062.50 against the City and County of Denver for breach of contract is affirmed. The remainder of the judgment is reversed.

COYTE and VAN CISE, JJ., concur.