Royce L. SMITH and A Meliroy Corporation, Plaintiffs-Appellees and Cross-Appellants.

v.

Kenneth HOYER and Walter A. Lukasik, Defendants and Cross-Appellees,

and

Jefferson Bank & Trust, Defendant-Appellant and Cross-Appellee.

No. 82CA1136.

Colorado Court of Appeals, Div. I.

Aug. 9, 1984.

Rehearings Denied Sept. 20, 1984.

Certiorari Denied March 25, 1985.

Pryor, Carney & Johnson, Thomas L. Roberts, Howard M. Haenel, Susan T. Smith, Denver, for plaintiffs-appellees and cross-appellants.

Rothgerber, Appel & Powers, James R. Everson, Charles Goldberg, Denver, for defendant-appellant and cross-appellee.

STERNBERG, Judge.

The plaintiffs, A. Meliroy Corporation and Royce L. Smith, its president, sued the defendants, Jefferson Bank and Trust, and bank officers Kenneth Hoyer and Walter A. Lukasik, for breach of contract after the defendants failed to honor an oral promise of an extension of time to repay construction loans. Following a jury trial, plaintiffs were awarded $124,000 in compensatory damages for breach of contract, and $125,000 for Smith's mental suffering which resulted from the willful and wanton breach of contract. The defendants appeal, and we affirm.

Smith, a licensed real estate broker, is the president of A. Meliroy Corporation, which is engaged in the business of building, remodeling, and selling homes. Hoyer was a vice president in charge of construction lending, and Lukasik was a construction loan officer for the defendant bank.

In the fall of 1977, the Bank and Peregrine Homes, Inc., entered into a financing arrangement for the construction of two homes in Jefferson County. In September 1977, Peregrine executed a promissory note in the principal amount of $78,000, secured by a first deed of trust on Lot 58, and one month later, executed another promissory note, in the principal amount of $71,400, secured by a first deed of trust on Lot 47. In September 1978, Peregrine executed two additional promissory notes, each in the principal amount of $12,000, and secured by second deeds of trust to Lots 58 and 47.

On March 7, 1979, the Bank and the plaintiffs entered an agreement which allowed the plaintiffs to assume Peregrine's four promissory notes at an annual interest rate of thirteen percent. The due dates on the notes were extended to September 1, 1979. Pursuant to this arrangement, Meliroy received title to the two lots from Peregrine by general warranty deed, subject to the deeds of trust. The unpaid balances on the notes when assumed was $169,077.83.

The parties agreed that Meliroy would complete construction of the homes without further funding from the Bank. Plaintiffs intended to complete construction of the two homes, sell them for a profit, and repay the loans. At the time of the assumptions, construction was sixty percent complete on Lot 58, and was seventy percent complete on Lot 47. No payment of interest or principal was made by plaintiffs prior to the September 1, 1979, due date.

While distraught over the recent death of his infant daughter, Smith phoned the Bank and explained his personal problem to both Hoyer and Lukasik. Smith told them that the plaintiffs had sufficient money either to pay the interest on the loans, or to finish construction of the homes if given an extension on the loans. Smith testified

that Lukasik and Hoyer told him he had an extension on the loans and to finish the homes so they could be sold.

On October 18, 1979, however, Lukasik called Smith and informed him that the loans were in default. On October 23, Smith received letters from the Bank instructing him to pay the notes or suffer foreclosure on the two lots.

The Bank instituted foreclosure proceedings on December 17, 1979, pursuant to C.R.C.P. 120, and on February 26, 1980, a hearing was held, after which Smith was found to be in default on the notes and an order of foreclosure on the two lots was issued. The Bank purchased the two lots at the foreclosure sale, and the plaintiffs did not redeem either of them.

The plaintiffs then filed this action, alleging that the Bank, through Hoyer and Lukasik, its officers, had orally granted them an extension of time to complete construction of the homes, that they had continued to work on the homes in reliance on this agreement, and that the Bank's subsequent foreclosure was a breach of this extension agreement.

## I.

The defendants assert that the trial court erred by giving erroneous and incomplete instructions regarding the elements of a claim for mental anguish caused by breach of contract. They argue that to recover damages for mental suffering caused by a willful and wanton breach of contract in Colorado, the breach must be malicious. They tendered an instruction to that effect and argue the court erred in not giving this instruction. We do not agree.

■ Pecuniary loss as the result of a breach of contract almost invariably causes some form and degree of mental distress. The traditional rule is that mental anguish which results solely from pecuniary loss following a breach of contract is not recoverable. *Adams v. Frontier Airlines Federal Credit Union*, 691 P.2d 352 (Colo.App. 1984); *D. Dobbs, Remedies* § 12.4 at 819 (1973).

There are exceptions to this rule, however. First, a plaintiff may recover for mental anguish if he shows that defendant's outrageous conduct accompanying the breach could have been the basis of an independent tort claim for negligent or intentional infliction of emotional distress. Second, a plaintiff may recover such damages if he shows a breach of contract of a personal or special nature, in which case proof of defendant's conduct is not a factor. *Trimble v. City & County of Denver*, 645 P.2d 279 (Colo.App.1981) (*cert. granted*, May 10, 1982).

■ In addition, a non-breaching party to a contract may recover damages for mental anguish alone when the breach is accompanied by willful and wanton conduct. *Farmer's Group, Inc. v. Trimble*, 658 P.2d 1370 (Colo.App.1982) (*cert. granted*, January 17, 1983). A willful and wanton breach is not a mere passive breach, involving simple negligence, *see Hall v. Jackson*, 24 Colo.App. 225, 134 P. 151 (1913), but is rather an intentional breach, involving willful, wanton, or insulting conduct, and without any legal justification or excuse. *McCreery v. Miller's Groceteria Co.*, 99 Colo. 499, 64 P.2d 803 (1936); *Fitzsimmons v. Olinger Mortuary Ass'n*, 91 Colo. 544, 17 P.2d 535 (1932). While such breaches have been termed "malicious," *see McCreery v. Groceteria Co., supra*, there is no requirement that instructions on willful and wanton breach include "malice" as an element. Indeed, such an instruction would be tautological.

■ We also disagree with defendants' contention that, because the trial court held that there was insufficient evidence to submit plaintiffs' claim of extreme and outrageous conduct to the jury, it should also have ruled that insufficient evidence had been submitted on the damage claim for mental anguish as a result of the willful and wanton breach. *See Farmer's Group, Inc. v. Trimble, supra*.

## II.

The defendants next contend that the damages awarded for mental anguish were

excessive and not supported by the evidence. We disagree.

Smith testified that as a result of the defendants' breach, he suffered sleeplessness, loss of appetite, diarrhea, and a rectal itch. However, he admitted that he did not consult a physician or other professional in this regard, and did not present any expert medical testimony on this issue of mental anguish damages. Defendants argue this was insufficient evidence upon which to base a damage award of $125,000.

■ The amount of damages is within the sole province of the jury, and an award will not be disturbed unless it is completely unsupported by the record. *See Bohlender v. Oster,* 165 Colo. 164, 439 P.2d 999 (1968); *Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978). Smith did testify regarding his mental anguish, and the defendants had the opportunity to cross-examine him on that issue. Thus, the award was not "completely unsupported by the record."

■ Given the difficulty in translating mental anguish into dollar amounts, we do not find the award to be excessive as a matter of law and, hence, may not disturb it on appeal. *Cf. Moseley v. Lamirato,* 149 Colo. 440, 370 P.2d 450 (1962).

### III.

The defendants' final contention is that the award of $124,000 as compensatory damages for breach of contract was excessive as a matter of law. We do not agree.

Again, we note that the amount of damages is within the sole province of the jury, and an award will not be disturbed unless it is completely unsupported by the record. *See Bohlender v. Oster, supra; Meiter v. Cavanaugh, supra.* However, the defendants argue that the jury was incorrectly instructed on the measure of damages for a breach of contract claim. The jury was instructed that the damages would be "the amount of money the Plaintiffs would have realized from their completion and sale of the [two] homes ... after paying the Defendant, Jefferson Bank & Trust, the principal interest due on the first Deeds of Trust."

■ The general measure of damages for breach of contract cases is that sum which places the non-defaulting party in the position the party would have enjoyed had the breach not occurred. *Taylor v. Colorado State Bank,* 165 Colo. 576, 440 P.2d 772 (1968). However, the non-breaching party is not entitled to be placed in a position more advantageous than that for which it contracted. *Fleming v. Scott,* 141 Colo. 449, 348 P.2d 701 (1960). The defendants contend that, under the above instruction, the plaintiffs were placed in a position more advantageous than they contracted for because the jury was not informed of the second deeds of trust, junior liens, and other encumbrances. We disagree.

■ Though the Bank's foreclosure of its first mortgages extinguished the junior liens, the plaintiffs remained liable on the underlying obligations. If the jury had deducted these obligations from the damages awarded, the plaintiffs in effect would have been charged twice for these obligations. Not only would their damage award have been reduced by this amount, but they would also have still owed this amount to the junior lienholders. Hence, they would have been placed in a position less advantageous than that for which they contracted. There was no error.

■ We agree with the defendants that the Bank was entitled to a set-off, or counterclaim, in the amount of the two $12,000 promissory notes secured by the second mortgages, against their breach of contract claim. But, since that claim arose from the same subject matter or occurrence as plaintiffs' claim, it was a compulsory counterclaim, C.R.C.P. 13(a), and was required to be asserted by defendants in this action. *Visual Factor, Inc. v. Sinclair,* 166 Colo. 22, 441 P.2d 643 (1968). It was not; therefore, there can be no recovery on this claim. *Visual Factor, Inc. v. Sinclair, supra.*

## IV.

The other contentions of error, including those raised by the cross-appeal, are without merit.

The judgment is affirmed.

PIERCE and BABCOCK, JJ., concur.