**SOUTH PARK AGGREGATES, INC.,**
**a Colorado corporation, Plaintiff–**
**Appellee and Cross–Appellant,**

v.

**NORTHWESTERN NATIONAL INSUR-**
**ANCE COMPANY OF MILWAUKEE,**
**WISCONSIN, Defendant–Appellant and**
**Cross–Appellee.**

**No. 91CA1310.**

Colorado Court of Appeals,
Div. II.

Dec. 17, 1992.
Rehearing Denied Jan. 14, 1993.

Richard J. Lesch, Denver, for plaintiff-appellee and cross-appellant.

Burg & Eldredge, P.C., David P. Hersh, Michael S. Burg, Denver, for defendant-appellant and cross-appellee.

Opinion by Judge PIERCE.

In this action for breach of contract and bad faith breach of an insurance contract, Northwestern National Insurance Co. (Northwestern), a Wisconsin insurance firm, appeals from a judgment entered upon a jury verdict in favor of South Park Aggregates, Inc. (South Park). South Park cross-appeals the judgment.

South Park was engaged in gravel production in Fairplay, Colorado. As part of its operation, South Park employed a front-end loader that was insured by Northwestern under an "all risk" policy, which provided coverage against "all risk of direct physical loss or damage from any external cause except as hereafter provided." Among the losses excluded from coverage were those resulting from "mechanical breakdown" or "due to infidelity of Insured's employees or persons to whom the insured property is entrusted."

On July 2, 1987, the oil plug fell out of South Park's loader, causing the engine to seize from loss of oil. Suspecting that the loader had been vandalized, Richard Stewart, the president of South Park, reported the incident to the Park County Sheriff's Department. The deputy investigating the incident, with whom Stewart had had a prior altercation, later filed a report concluding that Stewart's report of vandalism was unfounded.

South Park filed a claim with Northwestern to recover the cost of repairs to the loader and rental costs for a replacement loader. Shortly thereafter, Northwestern hired an insurance adjuster to investigate the claim.

Following the adjuster's investigation, Northwestern denied South Park's claim on the grounds that the damage to the loader had resulted from "mechanical breakdown" or "infidelity of Insured's employees" and that, therefore, it was not covered under the insurance contract.

South Park was unable to borrow money to repair the loader or to pay for a rental loader. Subsequently, liens on its equipment were foreclosed, forcing South Park out of business.

South Park initiated this lawsuit against Northwestern, and the case was tried to the jury on theories of breach of contract and bad faith breach of an insurance contract. Although the trial court approved South Park's tendered jury instruction on the basic measure of damages for a breach of contract claim, the jury was not given any instruction on the issue. Neither South Park nor Northwestern objected to the trial court's failure to give such an instruction.

Subsequently, the jury awarded South Park $915,000 in damages on its breach of contract claim, $915,000 in damages on the bad faith claim, and exemplary damages in the amount of $457,000. The trial court then entered judgment in favor of South Park in the amount of $915,000 plus $457,-000 in exemplary damages. In addition, the trial court granted South Park prejudgment interest on $11,499.73 of its compensatory damages.

Northwestern's motions for judgment notwithstanding the verdict or, in the alternative, a new trial, were denied.

I.

On appeal, Northwestern first contends that the trial court erred in failing to instruct the jury as to the measure of damages on South Park's breach of contract claim. As a result, it argues, the jury

applied the instruction on the measure of damages for bad faith breach of a contract of insurance twice, awarding South Park $915,000 on both the breach of contract claim and the bad faith claim. Therefore, Northwestern concludes, the judgment of the trial court must be set aside and a new trial granted. We disagree.

If neither party objects to the jury instructions given, and no instruction as to the measure of damages is tendered, it is the duty of the trial court to instruct the jury as to the proper measure of damages on its own motion. *Kendall v. Hargrave*, 142 Colo. 120, 349 P.2d 993 (1960). Failure to instruct the jury as to the proper measure of damages is reversible error. *See Maloy v. Griffith*, 125 Colo. 85, 240 P.2d 923 (1952).

Nevertheless, a judgment will not be reversed unless error is shown to be prejudicial to a substantial right of the aggrieved party. *Poudre Valley Rural Electric Ass'n v. City of Loveland*, 807 P.2d 547 (Colo.1991). Failure to provide a particular jury instruction is harmless error if the instructions given sufficiently cover the points sought to be developed in the tendered instructions. *Clark v. Giacomini*, 85 Colo. 530, 277 P. 306 (1929).

Here, although the jury received no instruction as to the proper measure of damages for a breach of contract claim, it was instructed as to the proper measure of damages for bad faith breach of an insurance contract. That instruction provided as follows:

If you find in favor of the Plaintiff, South Park Aggregates, Inc., you shall award as its actual damages, insofar as they have been proved by a preponderance of the evidence and insofar as they were caused by Defendant's bad faith breach of contract, an amount which will reasonably compensate the Plaintiff for its damages and losses, if any.

In determining such damages, you shall consider any economic losses incurred to the present time or which will probably be incurred in the future, including loss of value of the business to

the extent that those items of damage have been proved by the evidence.

This instruction was an accurate statement of the law regarding the measure of damages for a claim of bad faith breach of an insurance contract. *See CJI–Civ.3d* 25:6 (1989).

The jury was also provided with special verdict forms for both the breach of contract and the bad faith claims.

Following deliberations, the jury answered "yes" to each of the interrogatories on Special Verdict Form B relating to the breach of contract claim, and "yes" to each of the interrogatories on Special Verdict Form D relating to the bad faith claim. The jury then awarded $915,000 on each of the claims, plus $457,000 in exemplary damages.

Subsequently, the trial court entered judgment in favor of South Park in the amount of $915,000, plus $457,000 in exemplary damages, although it did not state under which theory judgment was entered.

Under these circumstances, we conclude that the trial court's failure to instruct the jury as to the measure of damages for breach of contract was harmless error. The jury was properly instructed on the bad faith claim and entered appropriate findings on Special Verdict Form D to support its award of $915,000 in damages for bad faith breach of an insurance contract. *See Stewart & Stevenson Services, Inc. v. Pickard*, 749 F.2d 635, 644 (11th Cir.1984) ("[W]here an award of damages is authorized under two alternate theories of recovery, and the jury's finding of liability on one theory under a special interrogatory is supported by the evidence, the verdict and award will be affirmed on appeal."); *Cf. Mosher v. Schumm*, 114 Colo. 441, 166 P.2d 559 (1946) (if a case is submitted to a jury on two theories of recovery, one valid and the other not, and it is impossible to distinguish which theory the jury based its award on from the *general* verdict, the judgment must be reversed). Therefore, the failure to provide an instruction as to the measure of damages for breach of contract in this case does not warrant reversal.

## II.

Northwestern next contends that it is entitled to a new trial because the jury's damage award was so unconscionably excessive as to indicate that it was influenced by bias, prejudice, or passion. Again, we disagree.

■ The amount of damages to be awarded is within the sole province of the jury, and its award will not be disturbed unless it is completely unsupported by the record. *Smith v. Hoyer*, 697 P.2d 761 (Colo.App.1984). A jury verdict may not be set aside on grounds of passion, prejudice, or corruption unless damages are " 'so outrageous as to strike everyone with the enormity or injustice of them.' " *Higgs v. District Court*, 713 P.2d 840, 861 (Colo. 1985) (quoting *Burns v. McGraw–Hill Broadcasting Co.*, 659 P.2d 1351 (Colo. 1983)).

■ Here, South Park presented evidence that the damaged loader was valued at $60,000 and other equipment owned by South Park was valued at $286,500. In addition, South Park presented evidence that its processed inventory was worth between $357,000 to $640,500. Finally, South Park presented evidence that the cost of repairing the loader and renting a replacement was approximately $20,000. Deducting from this amount the $66,000 South Park owed creditors on its equipment, South Park's total damages from the loss of its business, based on this evidence, ranged from approximately $675,000 to $941,000.

Thus, there is support in the record for the award of damages, and it is binding on appeal. *See Smith v. Hoyer, supra.*

## III.

Northwestern next contends that the jury did not understand or ignored its instructions because it awarded damages on both the breach of contract claim and the bad faith claim, despite having been instructed that damages may be awarded only once for the same losses. Further, Northwestern argues, because the jury did

not understand its instructions, the trial court's judgment in the amount of $915,-000, instead of the $1,830,000 awarded by the jury, constituted a material alteration of the verdict. Therefore, Northwestern asserts, it is entitled to a new trial. We disagree.

■ Even if we assume that the jury's award of $915,000 on both the breach of contract and bad faith claims was inconsistent, such inconsistency should be resolved based upon the instructions given if it is possible to do so without violating the express intent of the jury. Moreover, if it is possible to resolve an inconsistency in keeping with the jury's intent, then any change in the verdict by the trial court is deemed to be a change in form and not substance, and reversal is not mandated. *Phillips v. Monarch Recreation Corp.*, 668 P.2d 982 (Colo.App.1985).

In *Weeks v. Churchill,* 44 Colo.App. 520, 615 P.2d 74 (1984), in an assault and battery action against a bartender and his employer, the jury awarded the plaintiff $21 in damages against the employee and $1500 in damages against the employer. The trial court then amended the verdict and entered judgment jointly and severally against both defendants in the amount of $1521. Finding that the trial court's amendment was consistent with the intent of the jury to hold both defendants liable and to award plaintiff damages in the amount of $1521, a division of this court affirmed the judgment as a change in the form of the verdict, and not the substance. This ruling has analogous applicability here.

■ Here, although the two claims contained different elements, a finding that Northwestern breached its contract with South Park was a condition precedent to a finding of bad faith breach of an insurance contract. The jury's answers to Special Verdict Forms B and D indicate that the jury found that the elements of both breach of contract and bad faith breach of a contract of insurance were satisfied. In addition, although it would have been possible for the jury to award damages for breach of contract and no damages or nom-

inal damages for bad faith, the jury awarded compensatory and exemplary damages on the bad faith claim. Thus, it is clear that the jury intended South Park to receive damages on its bad faith claim.

Because compensatory damages could not be awarded on both claims, the trial court appropriately entered judgment in favor of South Park in the amount of $915,-000. This was consistent with the intent of the jury, and therefore, it did not constitute an alteration in the substance of the verdict which would warrant reversal. *See Weeks v. Churchill, supra.*

## IV.

Northwestern next argues that the trial court erred in permitting South Park to present, through the testimony of Stewart, certain out-of-court statements made by the independent adjuster hired by Northwestern concerning whether the damage to the loader constituted "mechanical breakdown" within the meaning of the insurance policy. While Northwestern concedes that the adjuster was its agent for purposes of making a damage appraisal only, it contends that he was not empowered to make coverage determinations. Therefore, it argues, the adjuster's statements were not admissions of an agent made "within the scope of his agency or employment" as required by CRE 801(d)(2)(C). Moreover, Northwestern maintains that the erroneous admission of these statements was prejudicial because the applicability of the "mechanical breakdown" exclusion was central to both the breach of contract and bad faith claims. We perceive no error in the trial court's ruling.

■ An out-of-court statement by an agent is admissible against the principal as an admission if the statement concerns a matter within the scope of the agent's agency and is made during the existence of the agency relationship. *Westland Distributing, Inc. v. Rio Grande Motorway, Inc.,* 38 Colo.App. 292, 555 P.2d 990 (1976); CRE 801(d)(2)(C). The agent need not be specifically authorized to make the declaration to a third party to render it admissible

against the principal. *See Crawford v. Garnier*, 719 F.2d 1317 (7th Cir.1983) (report of agent admissible although agent was not authorized to make statements to anyone other than principal); M. Graham, *Handbook on Federal Evidence* § 801.23 at 791 (3rd ed. 1991).

▇ Whether an adequate foundation has been laid for the admission of evidence is a matter within the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse thereof. *See Pyles–Knutzen v. Board of County Commissioners*, 781 P.2d 164 (Colo.App. 1989).

▇ Here, based on the adjuster's testimony that Northwestern had sent him to the Park County Sheriff's office to investigate South Park's claim and that he had maintained a correspondence with Northwestern concerning the amount and nature of the damage, the trial court concluded that the adjuster's agency encompassed not only the appraisal of damage, but also an investigation into whether the claim was compensable. Thus, the trial court ruled that anything the adjuster had told Stewart "at any point during his investigation of [the] claim" was admissible as an admission against Northwestern.

Moreover, Stewart did not testify, as Northwestern suggests, that the adjuster had given him an opinion as to the applicability of the "mechanical breakdown" exclusion to South Park's claim. At trial, Stewart testified only that the adjuster had told him that "he'd been around this heavy equipment long enough to know if that oil plug stayed in that long, it didn't come out by itself."

Because there is adequate support in the record for the admission of the adjuster's out-of-court statements, the judgment will not be disturbed. *See Pyles–Knutzen v. Board of County Commissioners, supra.*

## V.

We also reject Northwestern's contention that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict on South Park's claims for exemplary damages and bad faith.

A jury's verdict may be set aside and judgment notwithstanding the verdict entered only if, when viewed in the light most favorable to the non-moving party, the evidence is such that reasonable persons could not reach the same conclusion as the jury based on the evidence presented. *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544 (Colo.1988); *Meiter v. Cavanaugh*, 40 Colo. App. 454, 580 P.2d 399 (1978); C.R.C.P. 59(e).

## A.

Initially, Northwestern contends that South Park presented no evidence of willful or wanton conduct or "evil intent" on the part of Northwestern. Thus, it concludes, as a matter of law, the jury could not have found beyond a reasonable doubt that Northwestern acted with a wrongful motive which would justify an award of exemplary damages. We disagree.

▇ Exemplary damages may be recovered only as provided by statute. *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Colo.App.1988), § 13–21–102, C.R.S. (1987 Repl.Vol. 6A). To support an award of exemplary damages, a party must establish its claim by proof beyond a reasonable doubt. *Vogel v. Carolina International, Inc.*, 711 P.2d 708 (Colo.App.1985); § 13–25–127(2), C.R.S. (1987 Repl.Vol. 6A).

▇ Exemplary damages may be recovered on a claim of bad faith breach of an insurance contract if the breach is accompanied by circumstances of fraud, malice, or willful and wanton conduct. *Farmers Group, Inc. v. Trimble, supra.* Malice or wanton conduct may be established by evidence that the defendant knew or should have known that injury would result from its actions. *Bodah v. Montgomery Ward & Co.*, 724 P.2d 102 (Colo.App.1986).

▇ Here, South Park presented evidence that Northwestern was aware that the damage to the loader was a probable result of vandalism. The independent adjuster's report submitted to Northwestern, which was admitted into evidence at trial,

concluded that the "mechanical break-down" of the loader occurred as a result of the vandalism. In addition, notes from the claim file of Northwestern's own insurance adjuster, which were also admitted at trial, indicated that there "[a]ppears to be tampering with the [oil] plug, not by insured," and "we can't prove insured is the one." In another note, which referred to the Park County sheriff's report, Northwestern's adjuster wrote, "I said it looks like cop is going out of his way to not show vandalism—[independent adjuster] agreed."

Moreover, South Park presented evidence that Northwestern was aware of the consequences of its denial of its claim. A person who leased a replacement loader to South Park testified that he had contacted Northwestern's adjuster and informed him that he could not lease the loader to South Park if Northwestern did not pay for the rental and that South Park would likely be driven out of business without the loader.

Thus, there is substantial evidence in the record, when viewed in the light most favorable to South Park, that would support a jury finding of willful and wanton conduct beyond a reasonable doubt. Consequently, the trial court did not err in denying the motion for judgment notwithstanding the verdict. *See Bodah v. Montgomery Ward & Co., supra.*

### B.

Northwestern also contends that the trial court erred in refusing to enter judgment notwithstanding the verdict on South Park's bad faith breach of an insurance contract claim. Relying on *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985), it argues that South Park failed to present the requisite "objective" testimony as to the industry standard of care in handling insurance claims. Northwestern also argues that there was no evidence that it had acted in bad faith because there was "an arguable basis" for denying South Park's claim. We disagree.

In *Savio,* our supreme court established the principle that:

an insurer acts in bad faith in delaying the processing of or denying a valid claim when the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable or recklessly disregards the fact that the conduct is unreasonable.

*Travelers Insurance Co. v. Savio, supra,* 706 P.2d at 1275. Whether an insurer has acted unreasonably in denying or delaying approval of a claim must be "determined on an objective basis, requiring proof of the standards of conduct in the industry." *Travelers Insurance Co. v. Savio, supra,* 706 P.2d at 1275.

Here, South Park presented expert testimony from a claim consultant with over twenty years of experience in the insurance industry. He testified that certain "industry standards" govern the handling of insurance claims and that the reasonableness of an insurance adjuster's actions must be measured against "the things an adjuster ordinarily does and reasonably does." He further testified that it is unreasonable for an insurer to "operate without facts or to have the facts in the file and to ignore them."

Applying these standards to South Park's claim, South Park's expert concluded that Northwestern had acted unreasonably in denying the claim. Based on his experience in dealing with similarly-worded insurance contracts, he testified that there was no reasonable basis for the application of the "mechanical breakdown" exclusion here, because Northwestern was aware that an oil plug would not come loose if properly tightened and that the plug here had been "checked" prior to the time the claim arose. In addition, he testified that while an adjuster may ordinarily take a police report at face value, there was substantial evidence of bias in the Park County sheriff's report which would cast doubt upon its reliability.

South Park's expert also testified that there was no reasonable basis for the "infidelity of Insured's employees" exclusion. He testified that "entrustment from an insurance standpoint would have to be well documented." Here, he testified, Northwestern's investigation did not document any evidence which would reasonably es-

tablish that the damage to the loader resulted from the conduct of South Park's employees to whom the loader had been entrusted.

Finally, South Park's expert testified that anyone who looked at the review memo and claim file must have realized that the "mechanical breakdown" and "infidelity of Insured's employees" exclusions could not apply, yet Northwestern applied those exclusions in denying South Park's claims.

Viewing these facts in the light most favorable to South Park, reasonable jurors could have reached different conclusions as to whether Northwestern acted in bad faith in denying South Park's claim. Therefore, the trial court did not err in refusing to set aside the jury's verdict. *Meiter v. Cavanaugh, supra.*

■■■ Northwestern also contends that the trial court erred in refusing to give its tendered instruction on the bad faith claim and, as a result, the jury was not properly instructed as to the elements of the cause of action as stated in *Savio.* We disagree.

The form of instructions given a jury at trial is a matter within the discretion of the trial court, and it is not error for the court to refuse a tendered instruction, even if it is correct in legal effect, if the other instructions given adequately informed the jury of the applicable law. *States v. R.D. Werner Co.,* 799 P.2d 427 (Colo.App.1990).

Here, the jury was given the following instruction, modeled after *CJI–Civ.3d* 25:2 (1989), as to South Park's bad faith claim:

In order for the Plaintiff, South Park Aggregates, Inc., to recover from the Defendant, Northwestern National Insurance Company, on its claim of bad faith breach of an insurance contract, you must find all the following have been proved:

1. The Plaintiff incurred damages or losses;

2. The Defendant acted unreasonably in denying payment of the Plaintiff's claim;

3. The Defendant knew such position was unreasonable or the Defendant reck-

lessly disregarded the fact that its position was unreasonable; and

4. The Defendant's unreasonable position was a cause of the Plaintiff's damages or losses.

If you find that any one or more of these propositions have not been proved by a preponderance of the evidence, then your verdict must be for Defendant.

On the other hand, if you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict must be for the Plaintiff.

Although the instruction given required the jury to find that Northwestern had "acted unreasonably" in denying South Park's claim, rather than requiring, as Northwestern suggests, a finding that there was "no reasonable basis" for denying the claim, the instruction was consistent with the language and intent expressed in *Savio.* Therefore, the trial court did not err in refusing to give Northwestern's tendered instruction on the bad faith claim. *See States v. R.D. Werner Co., supra.*

## VI.

On cross-appeal, South Park contends the trial court erred in awarding prejudgment interest on only $11,499.73 of its compensatory damages, the amount of the claim which Northwestern refused to pay. South Park contends that § 5–12–102, C.R.S. (1992 Repl.Vol. 2) permits an award of prejudgment interest on compensatory damages which *flow from a wrongful withholding* of money or property belonging to the plaintiff as well as money or property *actually withheld* from the plaintiff. South Park concludes, therefore, that it is entitled to prejudgment interest on its entire award of compensatory damages. We disagree.

■■■ The right to prejudgment interest, independent of an agreement to pay it, is statutory. *See York Plumbing & Heating Co. v. Groussman Investment Co.,* 166 Colo. 382, 443 P.2d 986 (1968); § 5–12–102, C.R.S. (1992 Repl.Vol. 2).

Section 5–12–102(1), C.R.S. (1992 Repl. Vol. 2) provides, in pertinent part, that:

(a) When money or property has been wrongfully withheld, *interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property* from the date of the wrongful withholding to the date of payment or the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property *after they are wrongfully withheld or after they become due* to the date of payment or to the date judgment is entered, whichever first occurs. (emphasis added).

Because the phrase "wrongfully withheld" is not defined in the statute, we must ascertain and give effect to the intent of the General Assembly in determining whether § 5–12–102 permits an award of prejudgment interest on compensatory damages resulting from a wrongful withholding or limits prejudgment interest to the amount actually withheld. *See Smith v. Myron Stratton Home,* 676 P.2d 1196 (Colo.1984).

In determining legislative intent, we must first look to the language of the statute itself. If the language of the statute is unclear, we may look to rules of statutory construction to determine the objective sought by the legislation. *People v. Terry,* 791 P.2d 374 (Colo.1990).

Resort should never be had to a strained interpretation if the language of the statute is clear. *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973).

In prior cases, it has been determined that § 5–12–102 was intended to compensate a nonbreaching party for the loss of money or property to which he or she is otherwise entitled. *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362 (Colo. 1989). As the sponsor of that legislation stated:

'All plaintiffs, or defendants who counterclaim, for that matter, are entitled to interest from the time the action accrued, not from the time the suit was filed, not from the time judgment was entered, *but from the time they were wronged....*' (emphasis added)

*Mesa Sand & Gravel Co. v. Landfill, Inc., supra,* at 365. We have therefore held that § 5–12–102 must be liberally construed to achieve this end. *Isbill Associates, Inc. v. City & County of Denver,* 666 P.2d 1117 (Colo.App.1983).

In light of this precedent and legislative history, we are not persuaded that the General Assembly intended § 5–12–102 to permit a plaintiff to recover prejudgment interest on all compensatory damages flowing from a wrongful withholding of money or property.

To interpret § 5–12–102 as permitting recovery for *all* compensatory damages flowing from a wrongful withholding would render meaningless the statutory language limiting prejudgment interest to that money or property "wrongfully withheld." *See People v. Russell,* 703 P.2d 620 (Colo.App. 1985) (in interpreting statute, it must be presumed that the entire statute was intended to be meaningful).

Here, South Park was "wronged" at the time Northwestern denied its claim, and the only money or property "wrongfully withheld" by Northwestern was the amount of the claim which was improperly denied. The resultant damages from the loss of South Park's business operation occurred *after* the claim was denied. Therefore, we cannot properly state that all of South Park's compensatory damages constitute money or property "wrongfully withheld." *See Mesa Sand & Gravel Co. v. Landfill, Inc., supra. See also Shannon v. Colorado School of Mines,* —— P.2d —— (Colo.App. No. 91CA1749, Nov. 19, 1992) (prejudgment interest may not be awarded for future lost earnings because such earnings were not "due" or "withheld" within the meaning of § 5–12–102).

Relying on *Westfield Development Co. v. Rifle Investment Associates,* 786 P.2d 1112 (Colo.1990), South Park contends that

"specific" property need not be wrongfully withheld in order for a plaintiff to recover prejudgment interest on its compensatory damages. Therefore, South Park argues, it is entitled to prejudgment interest on its entire award of compensatory damages although Northwestern did not actually "withhold" those amounts. We disagree.

In *Westfield,* our supreme court upheld an award of prejudgment interest on a claim for intentional interference with contract. Recognizing that § 5–12–102 "is to be given a broad liberal construction in order to effectuate the legislative purpose of compensating parties for the loss of money or property to which they are entitled," the court found that an award of "prejudgment interest for pecuniary damages caused by intentional interference with contract was appropriate under section 5–12–102(1)(b)." *Westfield Development Co. v. Rifle Investment Associates, supra,* at 1122. However, the award of prejudgment interest was limited to those lost profits the injured party would have realized under the contract, it was not awarded on the *entire* amount of compensatory damages, which included lost down payments and expenses incurred in attempting to resell.

Similarly, the trial court here awarded prejudgment interest only on the amount of compensatory damages reflecting the benefit that South Park would have realized under the insurance contract. Therefore, we hold that the trial court did not err in declining to award prejudgment interest on the entire amount of South Park's compensatory damages award.

The judgment of the trial court is affirmed.

RULAND and BRIGGS, JJ., concur.