## Brown v. Crawford.

Nov. 30, 1943.

Victor L. Kelley and William R. Gentry for appellant.

E. N. Fulton, D. S. Arnold and J. S. Barlow, Jr. for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee, Charles Crawford, a negro, sued the appellant, Creel Brown, for damages which he alleged resulted from a violent, malicious and wilful assault made upon him by appellant. The jury returned a verdict for him for $700, of which $500 was compensatory and $200 punitive damages, and the defendant has appealed.

It is first insisted that the court erred in refusing to sustain appellant's motion for a directed verdict in his favor at the conclusion of all the evidence. This is on the theory that the evidence wholly fails to disclose facts constituting an assault. There was no actual battery, and it appears to be appellant's contention that a recovery for mental pain and suffering, occasioned without physical impact, cannot be had.

Appellant is the chief officer and general manager of the J. T. S. Brown Distillery located near Bardstown. Appellee was employed at the distillery in several capacities over a period of six or seven months. His employment terminated in July, 1940. An investigation by agents of the Federal Government disclosed that the distillery company had failed to pay various employees the full amount to which they were entitled under the Fair Labor Standards Act, sometimes referred to as the Wages and Hours Act, U.S.C.A., Title 29, sec. 201 et seq., and that appellee was entitled to the additional sum of $163.07. He learned that the company was paying these claims and on September 21, 1940, drove in his automobile to the office of the distillery. He was accompanied by another negro, Lee Hill. The office of the distillery was maintained in the residence of appellant adjacent to the distillery property. Appellee parked his car on the driveway in front of appellant's residence, about 25 or 30 feet from the front door. Lee Hill remained in the car. When appellee entered the house appellant, Mrs. Creel Brown, and Mr. Dugan, the night watchman, were engaged in conversation in the office. Appellee remained in the hall until Mr. Dugan left. Mrs. Brown saw him standing in the

hall, and said: "Creel, pay Charles." He walked into the office and this is what transpired as related by him in his testimony at the trial: "He (Creel Brown) laid the check down and told me I was the yellow rat that caused all the disturbance and he cursed and abused the Federal Government and the law and everything; said they was crooked too. I said, I had nothing to do with it. I said, I didn't have anything to do with it at all. * * * He said they was all crooked; that I was the yellow rat that caused all of the, all of it—He laid the check down and come toward me. I backed up. Mrs. Brown went between us. * * * He passed on by me and went in the bedroom."

He testified that he ran out the front door because he thought appellant was going to get his gun which was kept in the bedroom. He knew where appellant kept the gun because when he was employed at the distillery he sometimes acted as night watchman and used appellant's gun, and when he returned it in the morning appellant always put it in the bedroom. Appellee testified that he looked through the window into the bedroom as he ran out the door, and saw appellant with the pistol in his hand struggling with his wife who apparently was attempting to prevent him from leaving the room. He heard her scream as he opened the door. Appellee ran across the yard, passed his automobile, and as he passed the garage heard two shots. He climbed a fence, ran across a field through a soy bean patch, and came out on another road. The garage is located about 100 feet from the house.

John Gather, an ex-employee, went to the distillery office to get his check for the amount of overtime pay due him under the Wages and Hours Act and arrived while appellee was in the house. He parked his car behind appellee's car and as he walked onto the porch of appellant's home appellee rushed out of the house. Sensing that all was not as it should be, he ran back to the driveway but before he could enter his car appellant ran into the yard with a pistol in his hand, cursed, and asked where the s— of a b—— went. He fired the pistol twice or three times while facing in the direction appellee had run, then said to Gather: "You black s— of a b—— get away as quick as you can." All of the testimony was to the effect that the shots were fired in rapid succession. Appellee told one of the witnesses

shortly after the transaction that he was jumping over the yard fence when the first shot was fired and was in the middle of the adjoining field crawling on his hands and knees when the second was fired. John Moxley, the company's foreman and distiller, was standing near one of the distillery buildings, about 100 yards from the office, when the shots were fired. Appellant approached him with a pistol in his hand and asked if he had "seen anything of that varmint." Moxley asked "what varmint," and appellee replied: "That scamp, Charlie Crawford." Mrs. Brown was following her husband and begging him to return to the house. Appellant testified that Crawford arrived at the distillery office about 5:30 p. m. His check and two receipts had been prepared and were on the desk. Appellant told Crawford to sign the receipts, get his check and get out, and Crawford said he would go when he "got damn good and ready." This angered appellant, and he went into the bedroom and got his pistol in order to put Crawford out of the house. He testified that he fired two shots, but fired into the ground.

Smith v. Gowdy, 196 Ky. 281, 244 S. W. 678, 679, 29 A. L. R. 1353, is cited in support of appellant's contention that the evidence fails to show an assault for which a recovery may be had. In that case a landlord demanded possession of the rooms the tenant was occupying. The tenant declined to vacate the rooms, and thereupon the landlord's agent threatened to nail up a certain door which would deprive the tenant of her usual and customary means of ingress and egress. There was not only not an assault but not even a threat to commit an assault. No physical violence was offered or threatened. Here the facts disclosed by the evidence for appellee constitute an assault as defined in the Gowdy case: " 'An assault is an unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of immediate peril.' "

As defined in Cooley on Torts, vol. 1, sec. 95, "an assault is an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented."

The testimony of appellee and his witnesses, which the jury accepted, shows an assault of an aggravated nature. There is a sharp conflict in the authorities as ·to whether a recovery may be had against one guilty of negligence in causing fright resulting in physical injuries where there was no contemporaneous physical injury. This court is committed to the doctrine that in ordinary actions for mere negligence or where the injury to another is not wilful, there can be no recovery for mental suffering where there has been no physical contact. Reed v. Ford, 129 Ky. 471, 112 S. W. 600, 19 L. R A., N. S. 225; Morgan v. Hightower's Adm'r, 291 Ky. 58, 163 S. W. (2d) 21. However, the general rule is that there may be a recovery for physical pain and suffering as well as mental suffering resulting from fright caused by the wilful wrong of another. Annotation in 11 A. L. R. 1119; 4 Am. Jur., Assault and Battery, sec. 183; 1 Sutherland on Damages, 4th Ed., sec. 24. Cf. Restatement of the Law of Torts, sec. 436. In 1 Cooley on Torts, sec. 108, it is said: ''In estimating damages for an assault and battery the insult and indignity and injury to the plaintiff's feelings may be considered, and physical pain, mental suffering, or mental anguish, or all three, may be inferred to exist to some extent from proof of fright caused by an assault.''

Clearly, the court did not err in overruling appellant's motion for a directed verdict.

Appellant complains because evidence as to the general reputation of the parties for peace and quiet was admitted. The court admonished the jury that the evidence was admitted only for the purpose of showing who was the aggressor. The question of admissibility of such evidence in a case like this was decided adversely to appellant's contention in Brown v. Simpson, 293 Ky. 755, 170 S. W. (2d) 345. The affirmative part of the answer was, in effect, a plea son assault demesne, and raised the question as to who was the aggressor.

Appellant also complains because instruction No. 6 told the jury that words do not justify an assault, but when this instruction is read in connection with the other instructions the jury could not have been misled. What has been said in regard to the sufficiency of the evidence disposes of other criticisms of the instructions.

**Judgment affirmed.**