Hart, J.,
 

 dissenting. The question presented in the instant case is whether, under the circumstances described in the amended petition and the opening state
 
 *312
 
 ment of counsel to the jury, which admittedly must be taken as the truth, the boisterous, atrocious and inexcusable verbal assault of the defendant upon the plaintiff in a public place and in the hearing of many people with knowledge that she was in an advanced state of pregnancy, causing her nervous shock, mental distress, impairment of health and a period of illness requiring medical treatment, gives the plaintiff a cause of action against the defendant, in the absence of physical contact with, or menacing threats of physical harm toward, the plaintiff.
 

 Liability for nervous shock or its harmful consequences, in the absence of some physical impact, is a comparatively recent doctrine in the law. Until about a half century ago, no reported eases had appeared in which claims were made for a recovery for the consequences of fright, mental distress or shock. And, until a quarter of a century ago, it was almost universally held that to support an action for physical harm, there must have been some physical impact so applied as to actually work a direct and immediate physical injury. The three leading cases in this country supporting this doctrine are
 
 Mitchell
 
 v.
 
 Rochester Ry. Co.,
 
 151 N. Y., 107, 45 N. E., 354, 56 Am. St. Rep., 604, 34 L. R. A., 781;
 
 Spade
 
 v.
 
 Lynn & Boston Rd. Co.,
 
 168 Mass., 285, 47 N. E., 88, 60 Am. St. Rep., 393, 38 L. R. A., 512; and
 
 Ewing
 
 v.
 
 Pittsburgh, C. & St. L. Ry. Co.,
 
 147 Pa., 40, 23 A., 340, 14 L. R. A., 666, 30 Am. St. Rep., 709.
 

 The reasons assigned by the courts for denial of recovery for the physical consequences of fright, shock or mé'ntal distress, unaccompanied by contemporaneous physical impact or injury, are that such claims cannot be placed in the mold of any category of tort actions known to the law; that there is a lack of judicial precedent for the legal recognition of such claims; that mental suffering and its consequences are so evanes
 
 *313
 
 cent and intangible that they cannot be foreseen or anticipated and for that reason have no reasonable proximate causal connection with the act of the defendant; that the recognition of such claims would open the door not only to fictitious and fraudulent claims but to litigation in the field of trivialities and mere bad manners; and that such claims present administrative difficulties for the courts which make judicial consideration inadvisable.
 

 In 'recent years, the courts have, in most instances, abandoned the idea that no action is maintainable for a tort unless it comes within a specified type or category of tort actions. They have discarded the lack of precedent as a reason for denying recovery, as such a theory would deny all progress and vitality in the law, and they have' determined that it is the responsibility of the law to grant a remedy for a substantial wrong even though a new term must be invented to describe it.
 

 Sir Frederick Pollock, perhaps the greatest authority in his day on the law of torts, said (Pollock on Torts [14 Ed.], 16) :
 

 "Down to our own time it was difficult to-find any definite authority for stating as a general proposition of English law that it is a wrong to do wilful harm to one’s neighbour without lawful justification or excuse. * * * Law begins not with authentic general principles, but with enumeration of particular remedies. * * * [There is no] law of delicts, but only a list of certain kinds of injury which have certain penalties assigned to them. Thus in the Anglo-Saxon and other early Germanic laws we find minute assessments of the compensation due for hurts to every member of the human body, but there is no general prohibition of personal violence * * *. Whatever agreements are outside the specified forms of obligation and modes of
 
 *314
 
 proof are incapable of enforcement; whatever injuries are not in the table of compensation must go without legal redress. The phrase
 
 damnum sine injuria,
 
 which for the modern law is at best insignificant, has meaning and substance enough in such a system. Only that harm which falls within one of the specified categories of wrong-doing entitles the person aggrieved to a legal remedy.
 

 *****
 

 “Such is not the modern way of regarding legal duties or remedies. * * * So we can be no longer satisfied in the region of tort with a mere enumeration of actionable injuries. The whole modern law of negligence, with its many developments, enforces the duty of fellow-citizens to observe in varying circumstances an appropriate measure of prudence to avoid causing harm to one another. * * * If there exists, then, a positive duty to avoid harm, much more must there exist the negative duty of not doing wilful harm, subject, as all general duties must be subject, to the necessary exceptions. The three main heads of duly with which the law of torts is concerned — namely, to abstain from wilful injury, to respect the property of others, and to use due diligence to avoid causing harm to others— are all alike of a comprehensive nature.
 

 “In fact, there are dicta of the late Lord Bowen’s, which appear fully to recognize the doctrine here contended for. He said, as Lord Justice, in 1892: ‘At common law there was a cause of action whenever one person did damage to another, wilfully and intentionally, and without just cause or excuse.’
 
 Skinner & Co.
 
 v.
 
 Shew & Co.,
 
 1 Ch., 413, 422, 62 L. J. Ch., 196. * * * A similar dictum in the same judge’s well-known judgment in
 
 Mogul Steamship Co.
 
 v.
 
 McGregor,
 
 23 Q. B. Div., 613, is in terms limited to damage to a man in his property or trade. But first, these are the only mate
 
 *315
 
 rial cases, for the duties of not wilfully harming our neighbours in person or reputation are admitted to be quite general; and, secondly, the Supreme Court of the United States has thought the last cited dictum sufficient warrant for an unqualified declaration. The opinion was thus expressed by Holmes, J., in 1901: ‘It has been considered that,
 
 prima facie,
 
 the
 
 intentional infliction of temporal damage is a cause of action,
 
 which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape. * * * It is no sufficient answer to this line of thought that motives are not actionable, and that the standards of the law are external. That is true in determining what a man is bound to foresee, but not necessarily in determining the extent to which he can justify harm which he has foreseen.’ ” See
 
 Aikens
 
 v.
 
 Wisconsin,
 
 195 U. S., 194, 204, 49 L. Ed., 154, 25 S. Ct., 3. (Italics supplied.)
 

 On that subject Professor Harper said:
 

 “If the actor intentionally created the threat of fear or apprehension, or if he actually sought to inflict direct physical injury upon the other, the common law has for centuries allowed a recovery for the emotional disturbance ’ under the formula of assault.
 
 (Lewis
 
 v.
 
 Hoover,
 
 3 Blackf. [Ind.], 407;
 
 Handy
 
 v.
 
 Johnson,
 
 5 Md., 450.) * * *. As a result of the hardening into rigid form of the rules governing assault, the law did not readily give redress where the harm apprehended was not immediate. Today, however, it seems that the emotional disturbance resulting from deliberate and intentional threats of future bodily harm constitutes the basis for a recovery if the emotional distress is sufficiently acute and the defendant’s conduct is wholly unreasonable. The requirement of immediacy of the threatened harm seems to have been an arbitrary condition imposed to insure the gravity of
 
 *316
 
 the situation. When a plaintiff’s peace of mind for his personal safety is intentionally disturbed by conduct which, while not threatening instant harm, is equally outrageous, the plaintiff may recover although no physical injury is actually sustained.” 1938 Wisconsin Law Review, 427, 428, citing
 
 American Security Co.
 
 v.
 
 Cook,
 
 49 Ga. App., 723, 176 S. E., 798, and
 
 Whitsel
 
 v.
 
 Watts,
 
 98 Kan., 508, 159 P., 401.
 

 In Prosser on Torts, 57, 58, it is stated:
 

 “The early cases refused all remedy for mental injury, unless it could be brought within the scope of some already recognized tort. Thus it was held that mere words, however violent, threatening or insulting, did not constitute an assault, and hence afforded no ground for redress. * * * But if some independent tort, such as assault, battery, false imprisonment, or seduction could be made out, the cause of action served as a peg upon which to hang the mental damages, and recovery was freely permitted. Such ‘parasitic’ damages were the entering wedge.
 

 “It has gradually become recognized that there is no magic inherent in the name given to a tort, or in any arbitrary classification, and that the infliction of mental injury may be a cause of action in itself. Its limits are as yet ill defined, but it has been extended to its greatest length in the case of intentional acts of. a flagrant character, whose enormity adds especial weight to the plaintiff’s claim, and is in itself an important guarantee that the mental disturbance which follows is serious and not feigned.”
 

 The courts for many years have allowed recoveries for insult, mental shock, and the violation of other personal rights against defendants who, because of a special relationship, are charged with a special duty of care toward persons within such relationship. For such violations of protective care, recoveries have been
 
 *317
 
 allowed to passengers of public carriers and to patrons of places of public entertainment such as hotels and theaters.
 

 In other situations where a defendant commits a traditional tort, even though a wrongful touching or an essential element, such as menacing threats, slander and libel
 
 per s'e,
 
 alienation of affections or false imprisonment, is not present, the courts, with great unanimity, have allowed recoveries for distress and humiliation. Incidentally, it should be observed that in allowing recoveries in the classes of cases above mentioned, the courts have disregarded or have overcome the same objections and difficulties of administration as are present in cases such as the one at bar. Consequently, little validity should now attach to the reasons originally given for refusal to consider injuries due to shock and mental distress when they demand consideration at the hands of the courts.
 

 At the present time, the courts in most American jurisdictions permit recovery for physical harm or injury caused by mental distress for which the defendant is wrongfully responsible, even though there is an absence of contemporaneous impact. There is in this country, however, a sharp conflict of authority as to whether there may be a recovery where a physical injury or illness results from fright or mental shock caused by the
 
 negligent
 
 act of another, in the absence of physical impact or the commission of. an independent tort. In many cases, representing a modern viewpoint, such a recovery is allowed. In the case of
 
 Wolfe
 
 v.
 
 The Great Atlantic & Pacific Tea Co.,
 
 143 Ohio St., 643, 56 N. E. (2d), 230 (discovery of worms in a can of peaches after some of the peaches had been eaten by plaintiff causing nausea and resulting in vomiting and illness), this court held, Judge Turnerwriting the opinion, that in a negligence action “no
 
 *318
 
 liability exists for fright and its consequences when such fright is unaccompanied by contemporaneous physical injury,” but that
 
 “a
 
 jury question is presented as to whether physical injury resulted to plaintiff where the evidence disclosed that immediately after eating a portion of a can of peaches worms were discovered in the remainder thereof and plaintiff thereupon became ill and vomited and continued ill for several days.” A judgment for the plaintiff in that case was sustained by this court.
 

 In the case of
 
 Morton
 
 v.
 
 Stack, a Minor,
 
 122 Ohio St., 115, 170 N. E., 869 (defendant was the owner of an apartment house which caught fire and due to his negligence in not providing fire escapes a child was forced to stay in a smoked-filled room 15 minutes before a fireman rescued him; for some weeks theredfter the child was nervous, would shake, would cry out in his sleep, apparently living over again the occasion of the fire, and a year and a half later had a.convulsion), this court, in a unanimous
 
 per curiam
 
 opinion, affirmed the judgment of the Court of Appeals, which reversed the .judgment of the trial court which had directed a verdict for defendant. See, also,
 
 Pankopf
 
 v.
 
 Hinkley,
 
 141 Wis., 146, 123 N. W., 625, 24 L. R. A. (N. S.), 1159;
 
 Hanford
 
 v.
 
 Omaha & Council Bluffs Street Ry. Co.,
 
 113 Neb., 423, 203 N. W., 643, 40 A. L. R., 970; annotation, 40 A. L. R., 985 (leading case in United States);
 
 Comstock
 
 v.
 
 Wilson,
 
 257 N. Y., 231, 177 N. E., 431, 76 A. L. R., 676; annotation, 76 A. L. R., 684, 98 A. L. R., 403;
 
 Rasmussen
 
 v.
 
 Benson,
 
 133 Neb., 449, 275 N. W., 674, 122 A. L. R., 1468, 1492;
 
 Dryden
 
 v.
 
 Continental Baking Co.,
 
 11 Cal. (2d), 33, 77 P. (2d), 833;
 
 Frazee
 
 v.
 
 Western Dairy Products,
 
 182 Wash., 578, 47 P. (2d), 1037.
 

 In the instant case, the verbal attack of the defendant upon the plaintiff was made wilfully, intentionally
 
 *319
 
 and even maliciously, resulting in mental distress and subsequent illness. The courts almost universally hold, even those which recognize the rule denying liability for injuries resulting from fright or shock caused by negligence where there is no physical impact, that such rule cannot be invoked where it is shown that the fright or shock was due to a wilful or intentional and unreasonable wrongful act resulting in illness or physical injury. This is because the law is more willing to charge the defendant with the consequence of a wilful than a negligent wrong. See “Intentional Infliction of Mental Suffering: A New Tort,” by Prosser, 37 Michigan Law Review, 874. And, besides, in cases of wilful and intentional conduct, the court is not burdened with the problem of foreseeability, except possibly as to the unreasonableness of the defendant’s act.
 

 The majority opinion in this case takes the position that notwithstanding the insulting and brutal language of the defendant toward the plaintiff, causing her mental distress and nervous shock resulting in physical illness, shq is not entitled to recover for such physical illness because the defendant did not commit any technical physical assault upon her by striking her or making menacing threats of physical harm toward her, or eommit any other independent or traditional tort against her.
 

 As I see it, the majority opinion undertakes to test liability in this case by postulating the tort of assault, and then assuming the position that, .since the words spoken did not constitute a technical assault, no recovery can be had. In case of assault, - the wrong which gives a right of action is the act of assault itself, and damages for mental distress are allowed as parasitic damages, as incidental to the principal damages for the physical harm caused by the assault. But, if violent words directed against a plaintiff, even though
 
 *320
 
 they do not rise to the magnitude of_an assault, are so vicious as to cause mental distress and consequent physical injury and damages, there arises a cause of action.
 

 I maintain that the doctrine, which requires the commission of an independent concomitant and traditional tort in connection with the verbal onslaught, which in this case was sufficient in itself to cause emotional distress so acute as to result in physical illness, before there can be a recovery for such physical harm, has no application in this action. When any person wilfully, intentionally and without excuse sets in motion forces which cause physical injury to another by whatever means he may choose, he becomes liable under the law for such physical injury or harm.
 

 We have no concern here as to whether a plaintiff may recover for nervous shock or emotional disturbance alone where no physical injury follows. That is beside the point in this case. Here, we have a nervous shock and emotional disturbance resulting in physical injury. Here the action is not to recover for fright or shock but for the physical injury caused by or through the fright or shock (Bohlen, 41 Am. Law. Reg. [N. S.], 141, 153, 155). I concede that most cases hold that a recovery may not be had for fright or shock alone in the absence of consequential physical harm or damage. Plaintiff’s action is not based upon the mental distress but upon the physical harm inflicted upon her through the medium of mental distress. This point is illustrated in negligence cases. No recovery, can be had for negligent acts alone, no difference how reckless or wanton. Only when the negligent act results in injury and damage does a cause of action for the negligent act arise. In my view, a verbal attack may be so vicious and harmful as to cause physical illness, and if it is. of such character and accomplishes such pur
 
 *321
 
 pose through shock and mental distress, the combination of the attack and the consequent damages becomes a tort in itself for which a recovery may be had. I agree, as one writer said, that “there is liability only for conduct exceeding all bounds which could be tolerated by society, of a nature especially calculated to cause mental damage of a very serious kind,” but the law should not deny a recovery in a meritorious-case. See 37 Michigan Law Review, 874.
 

 The majority opinion quotes from 1 Restatement of Torts, 47, Section 21, under the subject of “Assault,” holding that there cannot be recovery for fright or shock
 
 alone
 
 unless the fright or shock grows out of an assault. Here the Restatement is not dealing with liability for physical illness resulting from fright or shock. This is made clear in Section 47 of the same chapter of the Restatement of Torts which says: “Except as stated in Sections 21 to 34 (a), [actual assault], conduct which is tortious because intended or likely to result in bodily harm to another or in the invasion of any other of his legally protected interests does not make the actor liable for an emotional distress which is the
 
 only legad consequence of Ms
 
 conduct.” (Italics supplied.) However, the Restatement of Torts recognizes a liability when the injury from fright or shock does result in physical harm or injury.
 

 In 2 Restatement of Torts, Section 312, under the subject of “Negligence,” and under the sub-caption “Emotional Distress Intended” the rule applicable to the instant case is stated as follows:
 

 “If the actor intentionally and unreasonably subjects another to emotional distress which he should recognize as likely to result in illness or other bodily harm, he is subject to liability to the other for an illness or other bodily harm of which the distress is a legal cause, (a) although the actor has no intention of inflicting such harm * * *.”
 

 
 *322
 
 The comment to the above section says:
 

 ‘‘
 
 a
 
 The rule stated in this section does not give protection to mental and emotional tranquillity. The actor’s conduct is negligent not because it is intended to subject the other to a mental or emotional disturbance but because it is likely to result in physical harm through the intended disturbance. The mental or emotional disturbance is important only in. so far as its existence involves a risk of bodily harm and as affecting the damages recoverable if the bodily harm which it threatens is sustained.
 

 “b
 
 In order that the actor be liable under the rule stated in this section, it is necessary that he act unreasonably. There are many situations in which it is reasonable, indeed inevitable, to subject another to a distress which is recognizably likely to have serious physical consequences. Thus, it may be necessary to inform even an ill woman of the death of a dearly loved relative.
 

 # # # # #
 

 “The actor who intends to subject another to distress necessarily knows the distress which he intends to cause, the person whom he intends to subject to it and the circumstances under which it is to be inflicted. He has a far greater ability to foresee its consequences and to realize that if inflicted, as he intends it to be, it may result in a bodily harm than one whose conduct is negligent because he should, but perhaps does not, realize that it may cause a similar distress.” In this connection 52 American Jurisprudence, 404, Section 58, says:
 

 “* * * there are cases * * * in which liability is regarded as properly imposed, although there is no contemporaneous bodily impact or injury, but a bodily, injury or illness has resulted from a mental or emotional disturbance caused by an act intended to pro
 
 *323
 
 duce such disturbance, or by an act or wrong characterized as wilful, wanton, malicious, or grossly reckless.”
 

 Many courts now hold, indeed the weight of modern-authority now is, that “even in the absence of a contemporaneous bodily impact or injury, or acts constituting an assault, a cause of action is regarded as properly predicated upon a mental or emotional disturbance, or a bodily injury or illness resulting therefrom, produced by disturbing utterances, such as * * * -insulting, humiliating, * * * or abusive language,” although there are cases to the contrary. 52 American Jurisprudence, 419, Section 73.
 

 In the case of
 
 Brown
 
 v.
 
 Crawford,
 
 296 Ky., 249, 177 S. W. (2d), 1 (an assault case without physical impact and without subsequent bodily harm), the court reviewed the case of
 
 Smith
 
 v.
 
 Gowdy,
 
 196 Ky., 281, 244 S. W., 678, 29 A. L. R., 1353, cited in the majority opinion, and recognized the doctrine here contended for by saying:
 

 “This court is committed to the doctrine that in ordinary actions for mere negligence or where the injury to another is
 
 not wilful,
 
 there can be no recovery for mental suffering where there has been no physical contact.
 
 Reed
 
 v.
 
 Ford,
 
 129 Ky., 471, 112 S. W., 600, 19 L. R. A. (N. S.), 225;
 
 Morgan v. Hightower’s Admr.,
 
 291 Ky., 58, 163 S. W. (2d), 21. However, the general rule is that there may be a recovery for physical pain and suffering as well as mental suffering, resulting from fright
 
 caused by the wilful wrong
 
 of another. Annotation in 11 A. L. R., 1119; 4 American Jurisprudence, Assault and Battery, Section 183, 1 Sutherland on Damages, 4th Ed., Section 24, Cf. Restatement of Law of Torts, Section 436.” (Italics supplied.)
 

 Cases illustrating that rule are
 
 Wilkinson
 
 v.
 
 Downton,
 
 L. R. 2 Q. B., 57, 66 L. J. Q. B., 493, 76 L. T., 493, 45 W. R., 525, 13 T. L. R., 388;
 
 Grimes
 
 v.
 
 Gates,
 
 47 Vt.,
 
 *324
 
 594, 19 Am. Rep., 129;
 
 Johnson
 
 v.
 
 Sampson,
 
 167 Minn., 203, 208 N. W., 814, 46 A. L. R., 772;
 
 Barnett
 
 v.
 
 Collection Service Co.,
 
 214 Ia., 1303, 242 N. W., 25;
 
 May
 
 v.
 
 Western Union Telegraph Co.,
 
 157 N. C., 416, 72 S. E., 1059, 37 L. R. A. (N. S.), 912;
 
 Fitzsimmons
 
 v.
 
 Olinger Mortuary Assn.,
 
 91 Colo., 544, 17 P. (2d), 535;
 
 Erwin
 
 v.
 
 Milligan,
 
 188 Ark., 658, 67 S. W. (2d), 592;
 
 Cashin
 
 v.
 
 Northern Pacific Ry. Co.,
 
 96 Mont., 92, 28 P. (2d), 862;
 
 Pacific Mutual Life Ins. Co. of California
 
 v.
 
 Tetirick, Gdn.,
 
 185 Okla., 37, 89 P. (2d), 774.
 

 The recognition of liability for an intentional or wilful tort causing shock and nervous disturbance followed by physical illness was fully recognized by this court through dicta in
 
 Miller
 
 v.
 
 Baltimore & Ohio Southwestern Rd. Co.,
 
 78 Ohio St., 309, 81 N. E., 440, and in
 
 Davis
 
 v.
 
 Cleveland Ry. Co.,
 
 135 Ohio St., 401, 21 N. E. (2d), 169, although both of these cases are negligence cases. In the former the ancient rule then prevalent was applied, and in the latter there was no physical injury.
 

 Under the law as I interpret it, upon the allegations of plaintiff’s amended petition together with the statement of counsel as to the evidence to be offered thereunder, plaintiff was entitled to go to the court and jury with her evidence.