STEEL TECHNOLOGIES,
INC. Appellant,

v.

Jason CONGLETON (Individually; in his Capacity as Administrator for the Estate of Melissa Congleton; and in his Capacity as Parent and Next Friend of Jacob and Samantha Congleton) Appellees.

No. 2005–SC–000551–DG.

Supreme Court of Kentucky.

June 21, 2007.

Rehearing Denied Nov. 1, 2007.

Charles S. Cassis, Stockard R. Hickey, III, Frost, Brown & Todd, Louisville, Counsel for Appellant.

Meredith L. Lawrence, Warsaw, Counsel for Appellees.

Joe C. Savage, Cory Michael Erdmann, Savage, Elliott, Houlihan, Moore, Mullins & Erdmann, Lexington, Counsel for Amicus Curiae, Kentucky Academy of Trial Attorneys.

F. Larkin Fore, Sarah Megan Fore, Fore, Miller & Schwartz, Louisville, Counsel for Amicus Curiae, Trucking Industry Defense Association.

Opinion of the Court by Justice NOBLE.

In this wrongful death action, the Gallatin County Circuit Court jury returned a significant verdict awarding damages for wrongful death, loss of parental consortium, and pre-impact fright against Appellant Steel Technologies, Inc. The jury also awarded punitive damages. Steel Technologies challenges the loss of parental consortium award as being unsupported by the evidence; the pre-impact fright damages as being unavailable under Kentucky law; and the punitive damages as being in violation of KRS 411.184(3), improperly imposed for mere negligence, and in violation of due process.

## I. Background

This case arose from a tractor-trailer accident that resulted in the death of Melissa Congleton. The driver of the tractor-trailer, Ralph Arnold, was employed by Steel Technologies to haul the large steel coils produced in Ghent, Kentucky to other facilities. The steel coils were hauled using a flatbed trailer, secured with steel chains and other equipment. On the day of the accident, Arnold was hauling a steel coil that weighed approximately 37,000 pounds. He had secured the coil with three steel chains, though regulations promulgated by the Federal Motor Carrier Safety Administration required at least five chains given the weight of the cargo and the type of chains in use.

On Highway 421 in Henry County, an unidentified car stopped in the path of Arnold's tractor-trailer, causing him to brake suddenly. Two of the chains holding the steel coil broke, and the coil fell through the side of the flatbed trailer, directly in the path of an oncoming pick-up truck in the next lane. The pick-up struck the steel coil and bounced off the side of the road, where it struck a stone wall before coming to a stop. The front driver's side quarter of the pick-up was crushed, and the driver, Melissa Congleton, died at the scene from the impact.

Congleton's husband filed multiple suits against Steel Technologies, Inc.: one on behalf of his wife's estate seeking damages for wrongful death, intentional infliction of emotional distress, pain and suffering, and punitive damages; one on his own behalf for loss of spousal consortium; and one on behalf of their two children for loss of parental consortium. The various suits were later consolidated.

Prior to trial, the trial court granted summary judgment in favor of Steel Technologies as to the claims of loss of spousal consortium and intentional infliction of emotional distress; however, the court granted summary judgment against Steel Technologies on the issue of liability, holding that the company was vicariously liable for its driver's actions as a matter of law. That left only the issue of damages for the remaining claims to be resolved at trial.

The jury heard evidence for two days. At the close of the plaintiff's case, the trial court determined that instructions on pain

and suffering after the impact would be improper. At the close of the defendant's case, the trial court decided that the evidence supported giving an instruction on the emotional distress caused by Congleton's perception of the impending impact (pre-impact fear), and also gave damages instructions on wrongful death, punitive damages, and loss of parental consortium for the two children. The jury returned an award of $667,267 in compensatory damages for the wrongful death; $1,000,000 in loss of consortium damages for each child; $100,000 in pre-impact fear damages; and $1,000,000 in punitive damages. The total award was for $3,767,267.

Steel Technologies satisfied the judgment in part, but appealed the awards for punitive damages, pre-impact fear, and loss of parental consortium. The Court of Appeals affirmed. Steel Technologies sought and was granted discretionary review by this Court.

## II. Analysis

### A. Preservation

■ Several of Steel Technologies' claims consist of challenges to the sufficiency of the evidence. The Appellees respond to the merits of all claims, but also argue that the claims of error related to the sufficiency of the evidence were not properly preserved for appellate review because there was no motion for a directed verdict at the close of all the evidence. In support, the Appellees point to an order from the Court of Appeals, which they claim held that no directed verdict motion was made and which has now become the law of the case, since no appeal was taken from that order.

Steel Technologies responds by noting that the record shows it did move for a directed verdict at the end of the Appellees' proof, followed by a motion for a judgment notwithstanding the verdict

(JNOV) after the trial, and that there is some evidence that it moved for a directed verdict at the close of all the proof. In the alternative, Steel Technologies argues that the Appellees are barred from raising the preservation issue at this point because the matter was implicitly decided against them by the Court of Appeals, yet no cross-motion for discretionary review was filed addressing it.

The record does not show whether a motion for a directed verdict was made at the close of Steel Technologies' proof. The record of the trial is on three video tapes. The testimony of Steel Technologies' last witness is included near the end of the second tape. After the witness left the stand, the trial judge took a short recess and allowed the jury to leave the court room. The tape shows that after the jury left, the attorneys and the judge remained in the court room and discussed what to do about a police officer having taken photographic exhibits with him when he finished testifying. The tape then ends; the final time stamp is 10:56:49 a.m. The next tape picks up at 11:15:40 a.m. with the attorneys conferring with the judge about the proposed jury instructions. The gap of approximately 20 minutes between the tapes is the period during which a motion for a directed verdict, if any, was likely made.

Steel Technologies has cited to the following comment by one of its attorneys as proof that the directed verdict motion was made: "Judge, I don't want to waive any of our objections to instructing the jury on any of these counts, but without waiving these, in light of the court's ruling." The comment, made approximately ten minutes into the jury instructions discussion, was made in support of the use of Steel Technologies' proposed punitive damages instruction.

Whether a motion for a directed verdict was made became an issue after the trial when Steel Technologies moved for JNOV and began the appeals process. The trial court denied the JNOV motion. No notice of appeal was filed within the first thirty days after entry of the judgment. The Appellees moved to execute the judgment, arguing that the JNOV motion had not extended the time for filing the appeal since there had been no directed verdict motion at the close of all the proof. The trial court held execution of the judgment at that time, holding that the time for filing an appeal began to run the day after it ruled on the JNOV motion, assuming that Steel Technologies had been entitled to file the JNOV motion.

The court also noted that whether the JNOV motion had been properly filed was not yet ripe and reserved ruling on the issue since it could be rendered moot by Steel Technologies's failure to file a notice of appeal. Nevertheless, the court noted that it had reviewed the record to determine whether a directed verdict motion had been made and found that "[t]he portions of the tape viewed are not conclusive on this issue." The court also noted that it did "not recall such a motion having been made but that is not conclusive even in the court's own mind" and that a hearing on the issue would be necessary should a notice of appeal be filed. Steel Technologies filed a notice of appeal the same day the court entered this order and had filed a supersedeas bond several days before.

The Appellees subsequently objected in the trial court to the notice of appeal as untimely, again claiming that the JNOV motion had not been preceded by a directed verdict motion. The parties then filed multiple other motions and responses quibbling about the details and addressing the validity of the supersedeas bond, the notice of appeal, and the trial court's handling of the motion to execute the judgment. Competing affidavits about whether a directed verdict motion had been made were included with these filings. The trial court ultimately approved the supersedeas bond and stayed execution of the judgment during the appeal. The court's last order on this issue, however, did not address the propriety of the JNOV motion or its effect on the timeliness of the appeal. No further action related to whether the directed verdict motion had been made was taken at the trial court level.

The Appellees continued to complain about the lack of a directed verdict motion once the appellate process began. They filed a motion to dismiss the appeal, arguing that the appeal was untimely because the motion for JNOV was void due to the failure to move for a directed verdict and could not be relied on to stop the running of time for an appeal. Steel Technologies responded that it had moved for a directed verdict, but that a twenty-minute gap in the trial court's video record indicated that the motion simply had not been recorded. The Court of Appeals initially passed the motion to its consideration of the merits of the appeal, which allowed the briefing of the case to proceed. In their brief to the Court of Appeals, in a very short section titled "Appellant's Appeal Was out of Time, and the Issues Presented Were Not Preserved for Appeal," the Appellees "restate[d] and reiterate[d] as if reprinted every argument presented" in the motion to dismiss and noted that they "stand by [their] previously stated position." Eventually, the Court of Appeals addressed the motion in a separate order that was entered approximately two weeks before the opinion on the merits of the appeal was rendered.

The Court of Appeals noted in this order "that the record does not reflect that Steel Technologies moved for a directed verdict

at the close of all the evidence" and "that a portion of the proceedings when such a motion might have been made appears to have been omitted from the videotape," but that "it is an appellant's duty to see that the record is complete on appeal." The Court of Appeals noted that lack of a directed verdict motion at the close of all evidence meant that the trial court could not have granted a subsequent JNOV motion.

Nevertheless, the Court of Appeals held that the appeal was timely filed because the fact that the trial court could not have granted the JNOV motion did not mean that it could not consider the motion. It further held that the filing of the motion was sufficient to stop the running of the time for filing the appeal, and time began to run only upon the denial of the JNOV motion. Based on this reasoning, the Court of Appeals denied the motion to dismiss.

The Appellees now claim the Court of Appeals thus determined that various issues raised by Steel Technologies were not preserved for appeal. The Appellees claim that the record does not show that a directed verdict motion was made at the close of Steel Technologies' proof is correct, and given the conflicting opinions about whether it was made, this Court must conclude in this instance that it was not.

■■■ Steel Technologies can only prevail on an insufficiency of the evidence claim if preserved through a motion for a JNOV, which in turn must be predicated on a directed verdict motion at the close of all the proof. A mid-trial directed verdict motion alone, like the one made and relied on in part now by Steel Technologies, is insufficient to preserve an insufficiency of the evidence claim. *Baker v. Commonwealth*, 973 S.W.2d 54, 55 (Ky.1998) ("A defendant must renew his motion for a

directed verdict, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence, in order to be preserved for our review."). Allegations in post-trial affidavits that the mid-trial motion was renewed at the end of trial are no substitute for an actual record of such a renewed motion being made, especially when contradicted by opposing affidavits. Vague comments about preserving objections to the granting of any instructions are also insufficient. If a portion of a trial is not recorded, whatever the reason, the parties are not without recourse. *See* CR 75.13 (allowing narrative supplements where there are gaps in the record). This was not done here.

■■■ Ultimately, Steel Technologies has not shown sufficient evidence that an appropriate motion was made. It is the appellant's duty to present a complete record on appeal. Failure to show preservation of claims prohibits this Court's review of those claims.

■■■ Steel Technologies argues that the Appellees should be barred from raising preservation at this point. Steel Technologies is correct that any issues decided against the Appellees at the Court of Appeals cannot be raised before this Court without a cross-motion for discretionary review. *See Perry v. Williamson*, 824 S.W.2d 869, 871 (Ky.1992) ("Our rules are specific that if the motion for discretionary review made by the losing party in the Court of Appeals is granted, it is then incumbent upon the prevailing party in the Court of Appeals to file a cross-motion for discretionary review if respondent wishes to preserve the right to argue issues which respondent lost in the Court of Appeals, or issues the Court of Appeals decided not to address. If the party prevailing in the Court of Appeals wishes further consideration of such issues along with the issues

for which discretionary review has been granted, the prevailing party *must* file a cross motion for discretionary review."); *Commonwealth Transp. Cabinet, Dept. of Highways v. Taub*, 766 S.W.2d 49, 51–52 (Ky.1988) ("Upon our grant of the Commonwealth's motion for discretionary review, this Court undertook review of the decision of the Court of Appeals. We will not address issues raised but not decided by the Court below. It is the rule in this jurisdiction that issues raised on appeal but not decided will be treated as settled against the appellant in that court upon subsequent appeals unless the issue is preserved by cross-motion for discretionary review. CR 76.21(1); *Nashville, C. & St.L. Ry.Co. v. Banks*, 168 Ky. 579, 182 S.W. 660 (1916); and *Eagle Fluorspar Co. v. Larue*, 237 Ky. 263, 35 S.W.2d 303 (1931).... [F]ailure to file a cross-motion for discretionary review precludes further review in this Court.").

Steel Technologies' argument, however, incorrectly assumes that preservation of an error is a separate issue from the claim of error itself. Rather, preservation is simply one aspect of Steel Technologies' insufficiency-of-the-evidence claims. Essentially, the Appellees' allegation that some of Steel Technologies' claims of error were not properly preserved is simply an alternate ground for affirming the Court of Appeals. Such an allegation is not required to be cross-appealed. *See Hale v. Combs*, 30 S.W.3d 146, 150 (Ky.2000) ("[T]he prevailing party need not file a cross-appeal in order to assert that the lower court (or administrative agency) reached the right result for the wrong reason."); *Commonwealth, Corr. Cabinet v. Vester*, 956 S.W.2d 204, 205–06 (Ky.1997) ("Where the prevailing party seeks only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any

other reasons appropriately brought to its attention."). The Appellees are not now barred from asserting that Steel Technologies' claims were not preserved.

The question then becomes which of Steel Technologies' claims of error were not preserved for review.

 Steel Technologies challenges the punitive damages award on three grounds, claiming that they are not allowed under KRS 411.184(3), which limits vicarious liability for punitive damages to instances where the employer authorized, ratified, or should have anticipated the bad conduct of its employee; that they cannot be imposed for ordinary negligence; and that they violated due process limitations.

Steel Technologies' claim under KRS 411.184(3) is that there is a "complete absence of any evidence that [it] authorized, ratified or should have anticipated those acts ...." The second claim is basically that the proof at most showed that Steel Technologies was negligent, which alone is insufficient to impose punitive damages. These two claims are essentially that the evidence was insufficient to allow the punitive damages. As such, they were not preserved and will not be addressed by this Court.

 Steel Technologies challenges the loss of parental consortium damages on the ground that they were not supported by the evidence because the children did not testify, nor was any other evidence offered that would support damages. This argument was also not preserved for review and will not be addressed. In the course of this argument, Steel Technologies also claims that the trial court failed to properly instruct the jury that damages were to be limited to the children's minority, that the Appellees' counsel urged the jury to grant damages beyond that limited period, and that Ap-

pellees' counsel invoked the "golden rule" by asking the jury to step into the shoes of the children in determining the damages. No contemporaneous objection was made at trial to any of these. As such, they also were not preserved for review.

Insofar as the Court of Appeals affirmed the trial court on all of these issues, its judgment is affirmed, albeit for different reasons. Steel Technologies' remaining claims were preserved for review and are addressed below.

## B. Pre-impact Fear

■ Steel Technologies argues that the award for pre-impact fear conflicts with long-standing Kentucky law. Specifically, the company argues that the jury instructions and the award violated the impact rule for negligently inflicted mental damages. The Appellees respond that the impact rule was satisfied, since Mrs. Congleton was struck by the steel coil. They also imply that the impact rule should be abandoned since a negligence action need only show that the negligent conduct caused harm.

The Appellees' complaint included a claim for pain and suffering of Mrs. Congleton. However, at the close of their case, the trial court determined that there had been no evidence of pain and suffering after the impact because the evidence indicated that Mrs. Congleton was struck unconscious by the impact. Nevertheless, the court chose to instruct the jury on whether an award for pre-impact fear was appropriate. The judge referred to several unnamed cases for the proposition that under Kentucky law, pre-impact emotional distress damages are allowed when there is a "touching" involved; he also distinguished this case from those where someone is scared, for example, "by a mean look" without any contact. The court then gave the following instruction to the jury:

If you believe from the evidence that Melissa Congleton, as a result of the steel coil falling off the truck and colliding with her vehicle suffered serious emotional anxiety arising from the fear of injury, and that said fear was reasonable, that the occurrence of such injury was a reasonable medical likelihood, and that the anxiety was caused by exposure to the risk for which Steel Technologies, Inc. is legally responsible, then you may decide to award damages for emotional distress suffered by Melissa Congleton, if any, from the time she may have anticipated said event, and up until the moment she lost consciousness.

Under this instruction, the jury awarded $100,000 in such damages. The evidence to support the damages included skid marks, implying that Mrs. Congleton saw the coil before she hit it, and testimony that even after death, her face was fixed in the expression of a scream.

Though it is not clear what cases the trial judge relied on, his characterization of the law was partly accurate in that a touching has traditionally been required before recovery may be had for negligently inflicted emotional distress. "It is well established in this jurisdiction that 'an action will not lie for fright, shock or mental anguish which is unaccompanied by physical contact or injury.'" *Deutsch v. Shein*, 597 S.W.2d 141, 145–46 (Ky.1980) (quoting *Morgan v. Hightower's Adm'r*, 291 Ky. 58, 59–60, 163 S.W.2d 21, 22 (1942)); *see also Brown v. Crawford*, 296 Ky. 249, 253, 177 S.W.2d 1, 3 (1943) ("This court is committed to the doctrine that in ordinary actions for mere negligence or where the injury to another is not willful, there can be no recovery for mental suffering where there has been no physical contact."). In fact, the Appellees' brief relies heavily on *Deutsch*, describing its holding as requiring only a touching, which could be remote

from any emotional injury. In fact, the case does note that "[c]ontact, however slight, trifling, or trivial, will support a cause of action." *Id.*

The Appellees argue that cases like *Deutsch* have followed the "spirit and essence" of the Restatement (Second) of Torts, which allows recovery for "fright, shock, or other emotional disturbance resulting from the bodily harm or from the conduct which causes it . . . ." Restatement (Second) of Torts § 456(a) (1965). A comment to that section indicates that recovery should be allowed in a situation similar to this one. *Id.* § 456(a) cmt. e ("Thus one who is struck by a negligently driven automobile and suffers a broken leg may recover not only for his pain, grief, or worry resulting from the broken leg, but also for his fright at seeing the car about to hit him."). The Court of Appeals relied heavily on this section of the Restatement in reaching its decision.

■■■ However, this reading of the *Deutsch* is incomplete. As *Deutsch* goes on to note, "it is necessary that the damages for mental distress sought to be recovered be related to, and *the direct and natural result of,* the physical contact or injury sustained." *Id.* (emphasis added). Kentucky also has a line of cases holding that a cause of action does not even accrue until physical injury manifests. *See also Wood v. Wyeth–Ayerst Laboratories, Div. of American Home Products,* 82 S.W.3d 849 (Ky.2002); *Capital Holding Corp. v. Bailey,* 873 S.W.2d 187 (Ky.1994); *Davis v. Graviss,* 672 S.W.2d 928 (Ky.1984); *Louisville Trust Co. v. Johns–Manville Products,* 580 S.W.2d 497 (Ky.1979). The rule derived from these cases then is clear: It is not enough that emotional distress be accompanied by contact—it must be *caused* by the contact. This also means that any contact must precede the emotional distress before recovery is permissi-

ble under a negligence theory. The approach found in the Restatement does not reflect the law as it currently stands in Kentucky.

The rationale for the current rule is that pre-impact fear, like other alleged negligently caused emotional distress, is possibly trivial and simply too speculative and difficult to measure unless is it directly linked to and caused by a physical harm. *Deutsch,* 597 S.W.2d at 145–46 (" 'The reason being that such damages are too remote and speculative, are easily simulated and difficult to disprove, and there is no standard by which they can be justly measured.' " (quoting *Morgan v. Hightower's Adm'r,* 291 Ky. 58, 59–60, 163 S.W.2d 21, 22 (1942))). The proof of the fear in this case—the testimony of a person at the scene of the accident that the decedent's facial expression showed she saw the accident coming and was terrified—simply underscores the speculative nature of such harm. Mrs. Congleton's mental distress, if any, simply was caused not by the impact she suffered, but by fear of the impact. Under the impact rule as currently applied in Kentucky, her pre-impact fear and shock cannot serve as the basis of a claim, and any damages for such a claim are not recoverable.

The approach to the impact rule urged by the Appellees (and applied by the Court of Appeals) amounts to an alteration of the impact rule making it merely an accompanied-by-impact rule. The Appellees have also implied the Court should simply do away with the impact rule altogether; the *amicus* brief submitted by the Kentucky Academy of Trial Attorneys (KATA) explicitly argues that the rule should be abandoned. That, however, is easier said than done. Crafting a new, reasonable rule that would still take into account the concerns about the danger of fraud and speculative nature of mental harms would

be difficult without the proper case. Even the rule on intentional infliction of emotional distress, for which no contact has traditionally been required, recognizes these concerns and imposes greater restrictions than would come under the nontraditional and non-impact rules proposed by the Appellees and KATA. *See Craft v. Rice,* 671 S.W.2d 247, 249 (Ky.1984) (holding that tort of outrage requires that the conduct be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality, and that the emotional distress be severe).

Divining a new rule is further exacerbated in this case by the speculative nature of the proof at trial, which consisted primarily of the opinion of an emergency services worker about what the grimace on the victim's face meant. There was no scientific or medical proof of mental injury, and the victim herself was not available to testify, having been killed by the impact. In fact, wrongful death actions such as this are not susceptible to the sort of proof that might counsel in favor of altering or abandoning the impact rule.

On the other hand, injury actions could well give rise to a strong challenge to the impact rule in the future if the victim can give a first-hand account or reliable eyewitness testimony is available, and there is demonstrable evidence of mental distress manifesting in a medical injury proven through expert testimony. Absent such proof in this case, the Court declines to alter the impact rule.

Since the pre-impact fright damages in this case conflict with the impact rule as it currently stands, that portion of the judgment must be reversed.

### C. Constitutionality of the Punitive Damages Award

Steel Technologies claims that the award of $1,000,000 in punitive damages violated due process under *BMW of N. America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), and related cases. The company claims that the jury instruction on punitive damages was flawed because it included no limits on the amount available and that the punitive damages award itself was unconstitutionally excessive.

When discussing the punitive damages instructions after the close of proof, the parties discussed the due process cases and their effect on limiting punitive damages awards. However, Steel Technologies' attorney agreed to omit a specific limitation on the amount of the damages in the instruction, while reserving an objection to any award that was excessive and noting, "We don't have to argue that today." This was the correct approach, as the due process analysis requires a review of a punitive damages award after the fact. It also means that even if limitations in the instructions were appropriate, Steel Technologies waived them in favor of a post award review.

After the trial, Steel Technologies challenged the constitutionality of the punitive damages award in its JNOV motion, arguing that the award should be set aside entirely as requested in the directed verdict motions allegedly made at trial. Such a claim should actually be brought under CR 59.05, since it is a challenge to the amount of damages in light of due process requirements rather than a challenge to the sufficiency of the evidence. However, the form of the claim will not control the substance. Steel Technologies challenged the constitutionality of the award after trial; such a claim is sufficient to invoke the due process clause of the Fourteenth Amendment and therefore re-

quire review pursuant to the United States Supreme Court's punitive damages jurisprudence.

■ It is unclear whether the trial court engaged in the substantive analysis required by that jurisprudence, since the JNOV motion was summarily denied. As the trial court is also required to engage in the due process review, specific findings and conclusions by the court are preferred because they aid appellate review. However, the failure to make such findings does not bar review on appeal because the appellate court's review is *de novo. Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S.Ct. 1678, 1685–86, 149 L.Ed.2d 674 (2001) ("[C]ourts of appeals should apply a *de novo* standard of review when passing on district courts' determinations of the constitutionality of punitive damages awards."). It is unclear what standard of review is required on a subsequent appeal, since in *Cooper Industries* the Court remanded the case to the Court of Appeals for the due process review. However, since in *Campbell* the Supreme Court engaged in the *de novo* analysis itself, that standard of review appears appropriate even on subsequent, discretionary appeals such as this one. Regardless of the appropriate standard of review, the Court of Appeals' review in this case simply was not in error.

■ *Gore* and *Campbell* require that punitive damages awards be reviewed under three "guideposts": "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Campbell*, 538 U.S. at 418,

123 S.Ct. at 1520; *Gore*, 517 U.S. at 575, 116 S.Ct. at 1598–99.

■ The first guidepost, which is the "most important indicium of the reasonableness of a punitive damages award," *Gore*, 517 U.S. at 575, 116 S.Ct. at 1599, requires the review of a variety of factors:

the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Campbell*, 538 U.S. at 419, 123 S.Ct. at 1521. Unlike the harm involved in *Campbell* and *Gore*, the harm in this case was not economic. Rather, it consisted of the violent death of a young mother. The jury also found that the conduct in question involved reckless disregard for the lives or safety of others. While the other factors were not present, meaning the degree of reprehensibility involved is certainly lower than if Steel Technologies had intentionally harmed Mrs. Congleton, there is no doubt that some reprehensibility is present.

Under the second guidepost, it is clear that the difference between the compensatory damages and the punitive damages awarded was not outrageously disparate. The Supreme Court has held that few punitive damages awards that exceed a single digit multiplier of compensatory damages will survive constitutional scrutiny, and that the constitutional limit may be closer to a 4–to–1 ratio of punitive to compensatory damages. *Id.* at 425, 123 S.Ct at 1524. The punitive damages award of $1,000,000 fell well within these ranges. The direct compensatory damages for Mrs. Congleton's wrongful death were $667,267.

That makes for a ratio of approximately 1½ to 1. When the children's compensatory damages awards totaling $2,000,000 are taken into account, the ratio of punitive damages to compensatory damages is significantly lower, approximately 3/8 to 1. Both these ratios are significantly lower than those found to be inappropriate by the Supreme Court. *See id.* (ratio of 145 to 1); *Gore,* 517 U.S. at 582, 116 S.Ct. at 1603 (ratio in the range of 500 to 1).

With regard to the third guidepost, the civil penalty allowed by the Motor Vehicle Carrier Administration for the sort of violation in this case is $10,000. In fact, Steel Technologies did pay a fine of $10,000 for this incident. While the civil fine is significantly less than the punitive damages awarded in this case, the difference is significantly less than that encountered in *Gore* and *Campbell,* both of which also discussed $10,000 civil penalties. *Campbell,* 538 U.S. at 428, 123 S.Ct. at 1526 ("The most relevant civil sanction under Utah state law for the wrong done to the Campbells appears to be a $10,000 fine . . . ."); *Gore,* 517 U.S. at 584, 116 S.Ct. at 1603 (noting that the maximum fine under the law of the state where the conduct occurred was $2,000 but noting that other states allowed up to $10,000). The disparity between the fine in this case and the punitive damages is several orders of magnitude less than that encountered in both *Gore* and *Campbell.*

While the degree of reprehensibility in this case may not even approach the conceivable maximum, it is balanced by the fact that the ratios of punitive damages to compensatory damages and to civil fines are significantly lower than those in the Supreme Court's jurisprudence. In light of this, the punitive damages in this case were not excessive or exorbitant and therefore survive the due process challenge.

The decision of the Court of Appeals is affirmed in part and reversed in part, and this case is remanded to the circuit court with instructions to vacate that portion of the judgment awarding damages for emotional anxiety.

LAMBERT, C.J.; CUNNINGHAM, SCHRODER and SCOTT, JJ., concur.

MCANULTY, J., concurs by separate opinion.

MINTON, J., not sitting.

Concurring opinion by Justice MCANULTY.

I agree with the Majority that the amount of punitive damages awarded did not violate due process as promulgated by *Gore* and *Campbell.* I also agree that Steel Technologies did not preserve the other two issues relating to punitive damages—(1) whether the award violated KRS 411.184(3) and (2) whether Steel Technologies' conduct rose to the level of gross negligence. The record is incomplete as to the preservation of these issues and it is Appellant's duty to ensure a complete record for appeal. CR 75.13 allows an appellant to prepare a narrative statement to supplement the record in places where a gap may exist in the recording or transcript. Steel Technologies failed to avail itself of this rule, instead choosing to cite instances in the record from which it might be inferred that the issue was properly preserved. Inferential preservation does not satisfy the requirements of the rules. *See Hall v. King,* 432 S.W.2d 394 (1968) (requiring motion for directed verdict at the close of all the evidence for entitlement to JNOV); CR 76.12(4)(c)(v) (Appellant's brief must contain "a statement with reference to the record showing whether the issue was properly preserved for review[.]").

I write separately out of concern that future plaintiffs will analogize their cases to the facts of this one and feel likewise entitled to punitive damages. This is a regrettable and tragic case, resulting in the death of a young mother, but it is also a case of ordinary negligence. The Majority opinion should not be construed as setting a new culpability standard for an award of punitive damages; gross negligence is still required by both our statutory and common laws. "If the act was willful or the negligence gross, punitive damages may be recovered." KRS 411.130. Gross negligence requires "a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389–390 (1985). In my opinion, although Steel Technologies failed to exercise reasonable care, the failure did not evince a wanton or reckless disregard for others. This case should not serve as notice that ordinary negligence cases warrant punitive damages.